GUARDIAN PHOTO, INC v DEPARTMENT OF TREASURY

Docket No. 218503. Submitted September 7, 2000, at Lansing. Decided
November 14, 2000, at 9:10 A.M.

Guardian Photo, Inc., brought an action in the Court of Claims against
the Department of Treasury, seeking a refund of taxes it had paid
in 1991 under the Single Business Tax Act (SBTA). In 1991, the plain-
tiff had sold all of its operating assets to a competitor and had
abandoned the photo processing business. The gain realized on the
sale of the assets was used to discharge the plaintiff's liabilities,
with the remainder being distributed to the plaintiff's parent corpo-
ration shareholder. None of the proceeds of the sale were used to
acquire any asset for the use in future business operations or to
generate income for the plaintiff in future business operations. In
filing its single business tax return for the 1991 fiscal year, the
plaintiff treated the gain from the asset sale as income for the pur-
pose of computing its single business tax liability. In 1996, the
plaintiff filed an amended single business tax return for 1991 in
which it sought a refund representing that portion of its 1991 single
business tax liability resulting from treating the gain from the asset
sale as income subject to the SBTA, arguing that the asset sale was a
casual transaction within the meaning of subsection 3(2) of the
SBTA, MCL 208.3(2); MSA 7.558(3)(2), and was thus not a business
activity under that subsection and that, accordingly, the sale was
not business income within the meaning of subsection 3(3) of the
SBTA, MCL 208.3(3); MSA 7.558(3)(3), or part of its tax base under
subsection 9(1) of the SBTA, MCL 208.9(1); MSA 7.558(9)(1). The
defendant denied the requested refund, finding that the asset sale
did not qualify as a casual transaction for the purpose of the SBTA.
The plaintiff sought review of the defendant's denial of the request
for a refund. A hearing referee held that there was precedent for
allowing a corporation, under these circumstances, to treat the sale
of the assets as a casual transaction and to reduce its business
income under subsection 3(3), and accordingly its tax base under
subsection 9(1), by the amount of the gain from the sale of the
assets. However, the commissioner disagreed with the referee,
holding that a corporation was not entitled to take the casual trans-
action exemption. The plaintiff then commenced its action in the
Court of Claims, and the defendant moved for summary disposi-

tion. In response to that motion, the plaintiff argued that the sale of the assets was a casual transaction, that despite the fact that the literal language of subsection 3(3) precludes a corporation from taking the casual transaction exemption the defendant did not always adhere to the literal requirements of the SBTA, and that, in any event, the failure to afford corporations the casual transaction exemption would violate constitutional due process and equal protection guarantees. The court, Peter D. Houk, J., granted summary disposition for the defendant, holding that the language of subsection 3(3) clearly precluded corporations from taking the casual transaction exemption and that the constitutional claim was not properly before the court because the plaintiff had failed to state such a claim in its complaint. Following denial of its motion for reconsideration, the plaintiff appealed.

The Court of Appeals *held*:

1. Subsection 3(3) clearly and unambiguously provides that, for the purpose of the SBTA, business income means the taxpayer's federal taxable income, except "for a person other than a corporation" it means that portion of the federal taxable income derived from business activity. The language of subsection 3(3) evidences a clear legislative intent that a corporate taxpayer's business income for SBTA purposes is to be its federal taxable income without regard to whether the source of the income was from a business activity within the meaning of subsection 3(2). Accordingly, under the plain language of subsection 3(3), the plaintiff is not entitled to the casual transaction exemption created by subsection 3(2).

2. The question whether the differing treatment of corporate and noncorporate taxpayers in subsection 3(3) is constitutionally infirm was not properly raised either in the trial court or on appeal. Accordingly, that issue is deemed to have been abandoned.

Affirmed.

TAXATION — SINGLE BUSINESS TAX ACT — BUSINESS INCOME — BUSINESS ACTIVITIES — CORPORATIONS.

    Business income of a corporation for the purpose of the Single Business Tax Act means the corporation's federal taxable income; a corporation is not entitled to treat as its business income for the Single Business Tax Act only that part of its federal taxable income that is derived from business activity (MCL 208.3[3]; MSA 7.558[3][3]).

*Steven Z. Ettinger,* for the plaintiff.

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Glenn R. White*, Assistant Attorney General, for the defendant.

Before: TALBOT, P.J., and HOOD and GAGE, JJ.

PER CURIAM. Plaintiff appeals as of right from an order granting defendant summary disposition of plaintiff's tax refund claim pursuant to MCR 2.116(C)(8). We affirm.

I

Plaintiff sought a refund of taxes it paid under the Single Business Tax Act (SBTA), MCL 208.1 *et seq.*; MSA 7.558(1) *et seq.* Plaintiff incorporated in Pennsylvania, but maintained its headquarters in Northville, Michigan. During the 1991 tax year, plaintiff conducted a photograph processing business in eight states, including Michigan. According to plaintiff's complaint, "[p]ursuant to an Asset Purchase Agreement dated July 17, 1991, [plaintiff] agreed to sell all of its operating assets . . . to Qualex, Inc. . . . a competitor in the photo processing business." The sale occurred on October 11, 1991, after which plaintiff abandoned the photograph processing business. The asset sale produced for plaintiff a $60,063,396 gain. Plaintiff utilized this gain to discharge its liabilities, then distributed to its parent corporation shareholder the remaining proceeds. The complaint denied that plaintiff spent any proceeds "to acquire any asset for use in future business operations or to generate income for use by [plaintiff] in future business operations."

On March 12, 1992, plaintiff filed its single business tax return covering the fiscal year ending November 25, 1991. The single business tax plaintiff paid included taxes reflecting the sale of its assets. On March 4, 1996, plaintiff filed an amended return, demanding a refund of $51,137 plus interest. Plaintiff's complaint explained that the claimed refund reflected its "subtract[ion of] this gain from its reported business income as a casual transaction."

In May 1996, defendant sent plaintiff a notice of adjustment, denying the requested refund because defendant did "not agree that the transaction [plaintiff] described should be qualified as a casual transaction for Single Business Tax purposes." On appeal, a hearing referee reasoned to the contrary that "[p]recedent allows the taxpayer as a corporation to claim a casual transaction" for "[s]ale of all assets, distribution of proceeds and effective termination of existence." In June 1998, a commissioner issued a decision and order of determination disagreeing with the referee's opinion:

> The Referee stated in her recommendation that the sale of [plaintiff]'s operating assets, payment of debts, and distribution of proceeds to the parent corporation constituted, "within the most narrow definition," a casual transaction. The Referee, therefore, allowed a refund for receipt of proceeds from an isolated transaction.
>
> The Single Business Tax Act currently allows a casual transaction exemption to noncorporate as opposed to corporate entities. MCL 208.3(2)(3) [sic, MCL 208.3(2) and (3); MSA 7.558(3)(2) and (3)(3)] and MCL 208.4 [MSA 7.558(4)]. The Department has no authority to overrule statutory law. Because the claimant is a corporate entity, the claim for refund must be denied.

In response to defendant's denial of its claimed refund, plaintiff filed the instant suit, alleging that the SBTA excluded the gain from its tax base because the SBTA viewed the asset sale as a casual transaction.

In January 1999, defendant moved for summary disposition. Defendant averred that the SBTA provided that a corporation's tax base constituted its federal taxable income, from which the SBTA clearly did not provide for any casual transaction exclusion. Defendant alternatively argued that plaintiff's asset sale did not qualify as a casual transaction because the sale was "incident to [plaintiff's] regular business activity of owning and operating th[e sold] assets." Defendant urged that it was entitled to summary disposition pursuant to MCR 2.116(C)(8) because no authority supported plaintiff's claim.

Plaintiff responded with its own motion for summary disposition pursuant to MCR 2.116(C)(9) on the basis that defendant failed to assert a valid defense. Plaintiff conceded that it "would be hard pressed to dispute that the literal language of [the relevant SBTA] sections [MCL 208.2-208.4; MSA 7.558(2)-7.558(4)] excludes casual transactions only from the business activity of noncorporate taxpayers. Nevertheless, such an interpretation would render the statute constitutionally infirm, a result that this Court must take steps to prevent." Plaintiff cited a 1994 Court of Claims decision that opined the failure to afford corporations the casual transaction exception might violate constitutional due process and equal protection guarantees. Plaintiff further suggested that defendant did not always adhere to the literal requirements of the SBTA, and suspected that an agency rule might exist that reflected defendant's extension of the cas-

ual transaction exception to corporations. Lastly, plaintiff averred that the irregular and unique nature of the sale of its assets and the fact that plaintiff did not invest any of the proceeds of the sale for business purposes rendered the sale a casual transaction.

At the February 17, 1999, hearing on the parties' motions, defendant responded to plaintiff's suggestion that the SBTA might violate equal protection principles. Defendant explained that a rational basis existed to permit individuals' tax base exclusions of nonbusiness income but deny a corporation such exclusions because all corporate transactions affect the corporation's business.

On March 4, 1999, the trial court issued an opinion and order granting defendant summary disposition pursuant to MCR 2.116(C)(8). The court found plaintiff liable for the taxes because the casual transaction exclusion was not available to corporations. After examining the relevant SBTA provisions, the court opined that while plaintiff's asset sale likely represented a casual transaction under the statutes, the statutory language did not permit corporations to exempt from their single business tax base income derived from casual transactions. With respect to plaintiff's suggested equal protection violation, the court found this issue not properly before it because of plaintiff's failure to state any constitutional claim in its complaint, noting that "the proper avenue for Plaintiff to add this claim . . . is through a Motion to Amend its Complaint." Plaintiff moved for reconsideration on the basis that the trial court neglected to consider the 1994 Court of Claims opinion on which plaintiff relied in support of its equal protection contention, but the court denied plaintiff's motion.

II

Plaintiff contends that the trial court erred in interpreting the applicability of the casual transaction exception from business income because the court's conclusion that corporations did not qualify for the exception would render the statutory scheme violative of constitutional equal protection guarantees. This case requires our consideration and construction of several SBTA provisions. The meaning of a statutory provision is a question of law that we review de novo. *Cardinal Mooney High School v Michigan High School Athletic Ass'n*, 437 Mich 75, 80; 467 NW2d 21 (1991). We also review de novo a grant or denial of summary disposition based on a failure to state a claim under MCR 2.116(C)(8) to determine whether the claim is so clearly unenforceable as a matter of law that no factual development could establish the claim and justify recovery. *Smith v Stolberg*, 231 Mich App 256, 258; 586 NW2d 103 (1998). A motion under MCR 2.116(C)(8) tests the legal sufficiency of a claim by the pleadings alone. *Simko v Blake*, 448 Mich 648, 654; 532 NW2d 842 (1995); *Smith, supra*. All factual allegations in support of the claim are accepted as true, as well as any reasonable inferences or conclusions that can be drawn from the facts.

The primary goal of judicial interpretation of statutes is to ascertain and give effect to the Legislature's intent. *Frankenmuth Mut Ins Co v Marlette Homes, Inc*, 456 Mich 511, 515; 573 NW2d 611 (1998). The first criterion in determining intent is the specific language of the statute. *People v Borchard-Ruhland*, 460 Mich 278, 284; 597 NW2d 1 (1999). The Legislature is presumed to have intended the meaning it plainly

expressed. *People v Venticinque*, 459 Mich 90, 99; 586 NW2d 732 (1998). If the plain and ordinary meaning of the language is clear, judicial construction is normally neither necessary nor permitted. *Heinz v Chicago Rd Investment Co*, 216 Mich App 289, 295; 549 NW2d 47 (1996).

The single business tax is imposed on the privilege of doing business in Michigan and does not constitute an income tax. MCL 208.31(3); MSA 7.558(31)(3); *Consumers Power Co v Dep't of Treasury*, 235 Mich App 380, 381; 597 NW2d 274 (1999). The single business tax represents a value added tax that measures the increase in value of goods and services brought about by whatever a business does to them between the time of purchase and time of sale. It taxes what a business has added to the economy, as distinguished from the income tax's taxation of what the business has derived from the economy. *Consumers Power, supra.*

The single business tax is levied and imposed on "the adjusted tax base of every person with business activity in this state that is allocated or apportioned to this state." MCL 208.31(1); MSA 7.558(31)(1). Subsection 9(1) of the SBTA defines one's "tax base" as follows:

> "Tax base" means *business income*, before apportionment or allocation as provided in chapter 3 [MCL 208.40 *et seq.*; MSA 7.558(40) *et seq.*], even if zero or negative, subject to the adjustments in subsections (2) to (9). [MCL 208.9(1); MSA 7.558(9)(1) (emphasis added).]

Subsection 3(3) of the SBTA further explains "business income" in the following manner:

"Business income" *means federal taxable income,* except that *for a person other than a corporation* it means that part of federal taxable income derived from business activity. For a partnership, business income includes payments and items of income and expense which are attributable to business activity of the partnership and separately reported to the partners. [MCL 208.3(3); MSA 7.558(3)(3) (emphasis added).]

The term "business activity," as used in the phrase in subsection 3(3) "that part of federal taxable income derived from business activity," is defined in subsection 3(2) of the SBTA and encompasses the following concepts:

"Business activity" means a transfer of legal or equitable title to or rental of property, whether real, personal, or mixed, tangible or intangible, or the performance of services, or a combination thereof, made or engaged in, or caused to be made or engaged in, within this state, whether in intrastate, interstate, or foreign commerce, with the object of gain, benefit, or advantage, whether direct or indirect, to the taxpayer or to others, *but shall not include* the services rendered by an employee to his employer, services as a director of a corporation, *or a casual transaction.* Although an activity of a taxpayer may be incidental to another or other of his business activities, each activity shall be considered to be business engaged in within the meaning of this act. [MCL 208.3(2); MSA 7.558(3)(2) (emphasis added).]

Plaintiff insists that pursuant to these statutory provisions, its asset sale constitutes a casual transaction[1]

---

[1] MCL 208.4(1); MSA 7.558(4)(1) provides as follows:

"Casual transaction" means a transaction made or engaged in other than in the ordinary course of repeated and successive transactions of a like character, except that a transaction made or engaged in by a person that is incidental to that person's regular

unrelated to its business activity, and therefore excludable from plaintiff's single business tax base.

The clear and unambiguous statutory language set forth above contradicts plaintiff's contention, however, and precludes our construction of the statutory provisions in the manner plaintiff proposes. *Adrian School Dist v Michigan Public School Employees' Retirement System*, 458 Mich 326, 332; 582 NW2d 767 (1998). We find that reasonable minds could not differ concerning the conclusion that subsection 3(3) of the SBTA plainly equates a corporation's "business income" with its federal taxable income, and that the exclusion from this definition, limiting business income to "that part of federal taxable income derived from *business activity*," expressly and clearly does not apply to corporations.[2] *Id.* (emphasis added). See also *In re Juvenile Commitment Costs*, 240 Mich App 420, 427; 613 NW2d 348 (2000) (noting the propriety of judicial construction of statutes only "[w]hen reasonable minds can differ concerning the meaning of a statute"). Instead, as plaintiff in its brief on appeal again concedes, "Plaintiff-Appellant would be hard pressed to dispute that the literal language of these sections excludes casual transactions only from the business activity of noncorporate taxpayers." We will not through any strained interpretation damage, disparage, or undermine the Legislature's plainly

---

business activity is a business activity within the meaning of this act.

[2] While plaintiff correctly sets forth the maxim that "in doubtful cases, revenue statutes must be construed against the taxing authority," *Ecorse Screw Machine Products Co v Corp & Securities Comm*, 378 Mich 415, 418; 145 NW2d 46 (1966), we entertain in this case no doubt concerning the legislative intent to prevent corporations from reducing their single tax bases through exempting alleged casual transactions.

expressed intent that the "business income" limitation to income derived from business activity, which "business activity" expressly excludes "casual transaction[s]," MCL 208.3(2); MSA 7.558(3)(2), does not apply to corporate taxpayers. *Nation v W D E Electric Co*, 454 Mich 489, 494; 563 NW2d 233 (1997) ("[T]he Legislature must have intended the meaning it has plainly expressed."); *In re Worker's Compensation Lien*, 231 Mich App 556, 563; 591 NW2d 221 (1998) ("The wisdom of a statute is for the Legislature to decide and the law must be applied as written.").

Attempting to avoid the significance of the clear and unambiguous statutory language, plaintiff suggests that this Court nonetheless should extend to corporate entities the casual transaction exemption because application of the provisions of the SBTA according to their literal construction renders them an unconstitutional denial of equal protection.[3] Plaintiff subsequently stated the following, however, in its reply brief on appeal:

> In it's [sic] brief, the Department asserts that Guardian Photo failed to preserve any claim that its constitutional rights were violated. This assertion is irrelevant to this case. Guardian Photo, in its pleadings and briefs has never challenged the constitutionality of MCL 208.3; MSA 7.558(3). Quite the contrary; Guardian Photo's consistent position has been that based on the application and interpretation of this section, established by the Court of Claims in *Morton Int'l, Inc v Dep't of Treasury*, Court of Claims No. 93-14864-

---

[3] While plaintiff also suggests that defendant "does not itself regularly follow the literal terms of these provisions," plaintiff completely fails to substantiate that defendant adopted or adhered to an administrative policy to disregard the statutory language and to permit corporate single business taxpayers to exclude from their tax base calculations any casual transactions.

CM (9/14/94),[4] this Court is merely being asked to *uphold* its constitutionality by applying the casual sale exclusion to corporate taxpayers. There was thus no prior need for Guardian Photo to present an equal protection analysis on the pure speculation that the court would do an about face and interpret the section in an altogether different manner. [Emphasis in original.]

Although both parties argued before the trial court the constitutionality of the provisions at issue, our review of the record confirms that plaintiff never filed a claim alleging the unconstitutionality of the SBTA, despite the trial court's suggestion in the order granting defendant summary disposition that plaintiff should have moved to amend its complaint. Plaintiff first addressed the constitutional issue one week before the hearing on the parties' motions for summary disposition, raising the issue in its brief answering defendant's motion for summary disposition and supporting its request for judgment. In light of (1) plaintiff's failure to specifically present a constitutional claim in the statement of questions presented in its brief on appeal, *Caldwell v Chapman*, 240 Mich App 124, 132; 610 NW2d 264 (2000), (2) its concession that it has not presented a constitutional claim, and (3) its failure to include the constitutional claim in its complaint or move before the trial court to amend its complaint, we conclude that the trial court correctly found the constitutional issue not properly presented. *Nat'l Indemnity Co v Budget Rent A Car Systems, Inc*, 195 Mich App 186, 190-191; 489 NW2d 175 (1992)

---

[4] This Court of Claims case does not constitute controlling authority. *Detroit v Qualls*, 434 Mich 340, 360, n 35; 454 NW2d 374 (1990) ("[I]t is only opinions issued by the Supreme Court and published opinions of the Court of Appeals that have precedential effect under the rule of stare decisis. MCR 7.215(C).").

(finding a claim of the defendants not properly before it when, "[a]lthough defendants raised this argument in their own motion for summary disposition, the argument was never decided by the trial court . . . [and] defendants did not plead this argument either as an affirmative defense or as a counterclaim"); *Livonia v Dep't of Social Services*, 119 Mich App 806, 811-812; 328 NW2d 1 (1982) (finding that a claim not made in the plaintiffs' complaint was waived), affirmed in part 423 Mich 466; 378 NW2d 402 (1985). We will not consider this unpreserved issue.[5] *Providence Hosp v Nat'l Labor Union Health & Welfare Fund*, 162 Mich App 191, 194; 412 NW2d 690 (1987).

Because the SBTA plainly precludes plaintiff from defining its tax base by incorporating an exclusion for income derived from the purported casual transaction, we conclude that the trial court properly granted pursuant to MCR 2.116(C)(8) summary disposition for defendant of plaintiff's claim for a refund. In light of our conclusion that plaintiff corporation may not deduct from its single business tax base any alleged casual transactions, we need not consider whether plaintiff's asset sale in fact constituted a casual transaction.

Affirmed.

---

[5] We briefly note that a plaintiff asserting a tax's unconstitutionality must negate every conceivable rational basis that might justify the alleged discrimination, *Kellogg Co v Dep't of Treasury*, 204 Mich App 489, 496; 516 NW2d 108 (1994), but that plaintiff failed to counter defendant's proffered suggestion that corporate entity plaintiff is not situated similarly to noncorporate taxpayers because "[f]or noncorporate entities, especially individuals, federal taxable income includes more than the income from business activity. It also reflects income from wages as well as deductions and exemptions for personal activities (home interest deductions, home property tax deductions) which are not appropriate under a tax imposed upon business activity."