TMW ENTERPRISES INC v DEPARTMENT OF TREASURY

Docket No. 284446. Submitted June 2, 2009, at Lansing. Decided July 28, 2009, at 9:00 a.m.

TMW Enterprises Inc., a subchapter S corporation, brought an action in the Court of Claims against the Department of Treasury, seeking a refund of single business tax, interest, and a negligence penalty fee that the plaintiff paid under protest when the defendant determined that the plaintiff's gain from a sale of an asset was subject to taxation under the Single Business Tax Act (SBTA), MCL 208.1 *et seq.*, and did not qualify for a casual transaction exclusion under MCL 208.4(1). The Court of Claims, Paula J. M. Manderfield, J., determined that § 3(3) of the SBTA, MCL 208.3(3), was ambiguous and concluded that an S corporation is not a corporation within the meaning of the term "corporation," as used in § 3(3), and that an S corporation therefore could qualify for a casual transaction exclusion. The defendant appealed the judgment awarding the plaintiff a refund of the tax, interest, and penalty fee paid, plus statutory interest.

The Court of Appeals *held*:

1. S corporations are corporations within the plain and unambiguous meaning of the SBTA and, as a result, are not entitled to the casual transaction exclusion.

2. An S corporation is a corporation within the plain meaning of § 3(3). If an entity is a corporation, then its business income, under § 3(3), is its federal taxable income and it is not entitled to exclude casual transactions from its tax base because that exclusion applies only where a person's or partnership's business income is computed by looking to "business activity," not "federal taxable income."

Reversed in part and remanded for a new hearing.

TAXATION — SINGLE BUSINESS TAX ACT — CORPORATIONS — S CORPORATIONS — CASUAL TRANSACTIONS EXCLUSION.

All corporations, including subchapter S corporations, must determine their business incomes for purposes of the Single Business

Tax Act by looking to their "federal taxable income" and are not entitled to exclude "casual transactions" from their tax bases (MCL 208.3[3], 208.4[1]).

*Honigman Miller Schwartz and Cohn LLP* (by *June Summers Haas* and *Angela Emlet-Dardas*) for the plaintiff.

*Michael A. Cox*, Attorney General, *B. Eric Restuccia*, Solicitor General, and *Michael R. Bell*, Assistant Attorney General, for the defendant.

Before: FORT HOOD, P.J., and CAVANAGH and K. F. KELLY, JJ.

PER CURIAM. In this tax dispute, we must decide whether a subchapter S corporation[1] is a "corporation" within the meaning of MCL 208.3(3), § 3(3) of the Single Business Tax Act (SBTA), MCL 208.1 *et seq.* The Court of Claims ruled that § 3(3) is ambiguous and concluded that an S corporation is not a corporation within the meaning of § 3(3). We disagree, reverse in part, and remand for further proceedings. We hold that § 3(3) of the SBTA is clear and unambiguous and that the term "corporation" as used in that subsection includes S corporations.

### I. FACTS AND PROCEDURAL BACKGROUND

Plaintiff is a subchapter S corporation headquartered in Delaware with its principal office located in Rochester Hills, Michigan. Beginning in the 1980s, plaintiff, then known as Electro Wire Products, Inc., was engaged in the business of designing, manufacturing, and assembling electrical distribution systems for automotive,

---

[1] Section 1361 of the Internal Revenue Code defines an S corporation as a "small business corporation . . . ." See 26 USC 1361(a)(1).

truck, and industrial applications. Plaintiff's design and manufacturing facilities were located in Michigan and its assembly facilities were located throughout the United States and Mexico. Plaintiff's primary, and nearly exclusive, automotive customer was the Ford Motor Company. Because plaintiff was and is engaged in business in Michigan, it is subject to the SBTA.

In the early 1990s, plaintiff sought to expand its operations and considered becoming a publicly held entity as opposed to a privately held company. Ford, however, discouraged plaintiff's plans and encouraged plaintiff to sell its assets to plaintiff's competitor, Alcoa Fujikura, Ltd. Subsequently, plaintiff sold all its manufacturing assets to Alcoa on July 1, 1995, including plaintiff's name, "Electro Wire Products, Inc." Plaintiff accepted a lump sum payment at the time of sale, realizing a gain of $237,059,325. The sales contract also provided that plaintiff would receive certain payments contingent upon performance levels in 1995 and 1996. These levels were never met and, as a result, plaintiff never received the payments.

After the sale, plaintiff became known as "TMW Enterprises Inc." and ceased any designing, manufacturing, or assembly activities. However, because Alcoa did not purchase the properties upon which plaintiff's facilities were located, plaintiff remained as an entity solely for the purpose of managing that real estate. Eventually, plaintiff also became engaged in the business of management consulting.

Subsequently, defendant decided to audit plaintiff's single business tax returns during the tax years beginning January 1, 1993, and ending December 31, 1995. Plaintiff filed a single business tax return for each of these years. For the 1995 tax year, plaintiff did not include the $237,059,325 gain from the asset sale be-

cause plaintiff believed that it should be excluded as a "casual transaction" under § 4(1) of the SBTA, MCL 208.4(1).[2] Defendant, however, disagreed that the gain from the asset sale should be excluded. Rather, defendant determined that plaintiff should have included the gain from the asset sale in its 1995 tax base because plaintiff did not qualify for the casual transaction exclusion. As a result, defendant assessed plaintiff a single business tax in the total amount of $1,064,612.19, including interest and a negligence penalty fee. Plaintiff paid this amount under protest.

Plaintiff then filed suit in the Court of Claims, seeking a refund of the amount paid, plus statutory interest. Plaintiff's complaint alleged that the asset sale should not be included in the tax base because it was a casual transaction; that because plaintiff is an S corporation, as opposed to a "corporation" within the meaning of § 3(3) of the SBTA, MCL 208.3(3), it should be allowed to exclude the casual transaction from its tax base; and that defendant unlawfully assessed a negligence penalty.

The matter proceeded to a bench trial, after which the parties submitted posttrial briefs. Defendant argued that because plaintiff is an S corporation, it was not entitled to claim the casual transaction exclusion because all corporations are precluded from claiming this exclusion pursuant to the unambiguous language of the SBTA. Plaintiff countered that S corporations, like itself, are permitted to claim the exclusion.

The Court of Claims agreed with plaintiff and, relying heavily on the statute's legislative history and related amendments of federal law, found that the statute was ambiguous. It stated:

---

[2] Plaintiff did include this gain in its federal taxable income.

> [I]t is unclear if an S-Corporation is entitled to claim the casual transaction exemption. On one hand MCL 208.3(3) explicitly states that "business income" means federal taxable income for corporations, and that only persons other than corporations look to business activity to calculate their business income for SBT [single business tax] purposes. On the other hand, S-corporations, like partnerships, have no federal taxable income, making a calculation of business income based solely on federal taxable income for S-corporations nonsensical.

In the court's view, to read § 3(3) to mean that S corporations calculate their "business income" on the basis of federal taxable income would result in S corporations avoiding all SBT liability. The court concluded that "only C-corporations [are] to calculate their business income based only on federal taxable income [whereas] S-corporations and other non-corporate entities are to calculate their business income based on business activity." As a result, S corporations, the court determined, "are entitled to claim the casual transaction exclusion." The court then determined that plaintiff's one-time asset sale constituted a casual transaction and that the negligence penalty was unlawful. The court awarded plaintiff a refund plus any overpaid interest.[3] This appeal followed.

## II. STANDARDS OF REVIEW

Because the question presented on appeal is one of statutory construction, our review of the lower court's conclusions of law is de novo. *JW Hobbs Corp v Dep't of Treasury*, 268 Mich App 38, 43; 706 NW2d 460 (2005).

---

[3] After the court issued its opinion, plaintiff moved for reconsideration because the court failed to include statutory interest on the amount wrongfully collected, as requested in plaintiff's original complaint. See MCL 205.30. The court granted the motion and awarded plaintiff the statutory interest.

When interpreting a statute, our primary goal is to discern and give effect to the Legislature's intent. *Inter Coop Council v Dep't of Treasury*, 257 Mich App 219, 223; 668 NW2d 181 (2003). The first step to determining the Legislature's intent is the language used. *USAA Ins Co v Houston Gen Ins Co*, 220 Mich App 386, 389; 559 NW2d 98 (1996). "The Legislature is presumed to have intended the meaning it plainly expressed." *Linsell v Applied Handling, Inc*, 266 Mich App 1, 15; 697 NW2d 913 (2005). In looking to the language, we "must give effect to every word, phrase, and clause in a statute, and must avoid an interpretation that would render any part of the statute surplusage or nugatory." *Koontz v Ameritech Services, Inc*, 466 Mich 304, 312; 645 NW2d 34 (2002). If the statute does not define a term, we will give it its plain and ordinary meaning, *Inter Coop Council, supra* at 223, and we may consult dictionary definitions, *Alvan Motor Freight, Inc v Dep't of Treasury*, 281 Mich App 35, 43; 761 NW2d 269 (2008). If the language is plain and unambiguous, then judicial construction is neither necessary nor permitted. *Guardian Photo, Inc v Dep't of Treasury*, 243 Mich App 270, 277; 621 NW2d 233 (2000). A provision is ambiguous if it is susceptible to more than a single meaning or if it irreconcilably conflicts with another provision. *Fluor Enterprises, Inc v Dep't of Treasury*, 477 Mich 170, 177 n 3; 730 NW2d 722 (2007). Further, because a tax exemption statute is not at issue, we construe the SBTA against the government. *Manske v Dep't of Treasury*, 265 Mich App 455, 458; 695 NW2d 92 (2005).

### III. SBTA

On appeal, defendant argues that S corporations are corporations within the plain and unambiguous mean-

ing of the SBTA and as a result are not entitled to the casual transaction exclusion. We agree. Because an understanding of the relevant tax law will inform our decision, we first discuss the purpose and applicability of the SBTA.

### A. APPLICABLE LAW

The purpose of the SBTA[4] is to impose a tax upon the privilege of conducting business in Michigan. *Tyson Foods, Inc v Dep't of Treasury*, 276 Mich App 678, 686; 741 NW2d 579 (2007). The SBT "is a business activity tax that was enacted 'to provide for the imposition, levy, computation, collection, assessment and enforcement . . . of taxes on certain commercial, business, and financial activities . . . .' 1975 PA 228." *Fluor Enterprises, Inc, supra* at 174. As this Court has acknowledged, this tax is not identical to an income tax, although its effect on the economy is the same. *ANR Pipeline Co v Dep't of Treasury*, 266 Mich App 190, 199; 699 NW2d 707 (2005). Rather, the SBT is a type of value added tax (VAT). *Id.* at 198. The difference between the two is that a value added tax, like the SBT, is a tax on economic activity, whereas an income tax is a tax on what has been received from the economy. *Id.* at 199. Any person engaged in business activity in Michigan is subject to the SBTA. MCL 208.31.

The starting point for calculating tax liability under the SBTA is determining a person's "tax base." This is because the SBTA imposes a "specific tax upon the adjusted tax base of every person with business activity

---

[4] The SBTA was repealed in 2006. 2006 PA 325. As of December 31, 2007, persons engaging in business activities in Michigan are no long subject to SBT liability. *Id.* The Legislature's purpose in repealing the SBTA was to create an environment more conducive to "job creation and investment." MCL 208.151(b).

in [Michigan]" at a specified rate determined by the statute. MCL 208.31(1).[5] "For ease of administration . . . the SBTA uses the federal income tax system as a reference and starting point and . . . converts [a person's] federal tax base into a consumption-type VAT base." *Mobil Oil Corp v Dep't of Treasury*, 422 Mich 473, 497; 373 NW2d 730 (1985). Accordingly, § 9 defines "tax base" to mean

> business income, before apportionment or allocation as provided in chapter 3, *even if zero or negative*, subject to the adjustments in this section. [MCL 208.9(1) (emphasis added).]

And, in turn, "business income" is defined by § 3(3) and means

> *federal taxable income*, except that for a person *other than a corporation* it means that part of *federal taxable income* derived from *business activity*. For a partnership, business income includes payments and items of income and expense which are attributable to business activity of the partnership and separately reported to the partners. [MCL 208.3(3) (emphasis added).]

Thus, if a person is a corporation, its business income is its federal taxable income, which in turn is also its tax base. However, if a person is not a corporation, then its business income is determined by looking to "that part of federal taxable income derived from business activity." MCL 208.3(3). Further, § 3(3) goes on to specify that a partnership's business income is based solely on its business activity. The SBTA defines "business activity" as

> a transfer of legal or equitable title to or rental of property, whether real, personal, or mixed, tangible or intangible, or

---

[5] For the years at issue up to October 1, 1994, the SBTA imposed a 2.35 percent rate. MCL 208.31(1)(a). After September 30, 1994, the rate was 2.30 percent. MCL 208.31(1)(b).

the performance of services, or a combination thereof, made or engaged in, or caused to be made or engaged in, within this state, whether in intrastate, interstate, or foreign commerce, with the object of gain, benefit, or advantage . . . *but shall not include . . . a casual transaction.* [MCL 208.3(2) (emphasis added).]

Accordingly, a person "other than a corporation" and a partnership are entitled to exclude "casual transaction[s]"[6] from their tax bases because the computation of their business incomes does not include, by definition, casual transactions. MCL 208.3(3); MCL 208.3(2); see also *Manske, supra* at 461-462 (concluding that the plaintiff, a partnership, properly excluded a "casual transaction" from its tax base). Conversely, and as this Court has already acknowledged, a corporation is not entitled to the casual transaction exclusion because its business income is determined by its "federal taxable income" and not by its "business activity." MCL 208.3(3); *Guardian Photo, Inc, supra* at 279-280.

### B. ANALYSIS

As noted, the fundamental disagreement in the present dispute is the meaning of the term "corporation" as used in § 3(3) of the SBTA. Our resolution of this matter turns on the statutory language of § 3(3). As previously stated, this provision provides that "business income" means

*federal taxable income,* except that for a person *other than a corporation* it means *that part of federal taxable income*

---

[6] The SBTA defines "casual transaction" as follows:

"Casual transaction" means a transaction made or engaged in other than in the ordinary course of repeated and successive transactions of a like character, except that a transaction made or engaged in by a person that is incidental to that person's regular business activity is a business activity within the meaning of this act. [MCL 208.4(1).]

*derived from business activity.* For a partnership, business income includes payments and items of income and expense which are attributable to business activity of the partnership and separately reported to the partners. [MCL 208.3(3) (emphasis added).]

At the outset, we note that the SBTA does not specifically define the word "corporation." When a statute does not define a word, we may consult dictionary definitions. *Alvan Motor Freight, Inc, supra* at 43. Corporation is broadly defined as "[a]n entity . . . having authority under law to act as a single person distinct from the shareholders who own it and having rights to issue stock and exist indefinitely; [or] a group or succession of persons established in accordance with legal rules into a legal . . . person that has legal personality distinct from the natural persons who make it up . . . ." Black's Law Dictionary (8th ed). Notably, this definition makes no distinction between different types of corporate entities. Equally significant is the Legislature's explicit choice not to differentiate between different kinds of corporations; rather, the Legislature simply used the word "corporation." Given the Legislature's choice not to parse or to further define the term, it is self-evident that the term "corporation," as used in § 3(3), encompasses all types of corporations. Further, the term "corporation" is not susceptible to more than one meaning, nor does it create an irreconcilable conflict with another provision. See *Fluor Enterprises, Inc, supra* at 177 n 3. Accordingly, we hold that an S corporation is a corporation within the plain meaning of § 3(3). It follows that if an entity is a "corporation," like plaintiff, then its business income is its federal taxable income, however that number may be calculated, and it is not entitled to exclude casual transactions from its tax base. MCL 208.3(2); MCL 208.3(3); see also *Guardian Photo, Inc, supra* at 279-280. Because the provision

is plain and unambiguous, the Court of Claims erred by finding otherwise and impermissibly engaging in judicial construction.[7] See *id.* at 277.

On appeal, however, plaintiff posits that § 3(3) is ambiguous. According to plaintiff, this provision became ambiguous after the United States Congress amended federal tax law so that S corporations no longer have any federal taxable income at the entity level. However, when the language of a provision is clear, reliance on the statute's legislative history and related laws is not permitted. *Oneida Charter Twp v Grand Ledge*, 282 Mich App 435, 445 n 7; 766 NW2d 291 (2009). Such histories cannot alter a statute's plain meaning. *Id.* Accordingly, it is our opinion that the Legislature's silence with regard to this change in federal law and its potential ramifications under the SBTA plays no role in the proper interpretation of an unambiguous provision.

Further, there is no merit to plaintiff's argument that because it has no federal taxable income at the federal level, the Legislature must have intended that its business income be computed by looking to its "business activity." Plaintiff essentially repeats the

---

[7] The Court of Claims' reasoning failed to recognize that while the application of certain language to a given set of facts may be difficult, this does not make the words themselves ambiguous. *Oneida Charter Twp v Grand Ledge*, 282 Mich App 435, 445 n 6; 766 NW2d 291 (2009). In the Court of Claims' view, the term "corporation" could encompass all corporations or the term could exclude S corporations because it would be "nonsensical" to require S corporations to calculate their business income on the basis of federal taxable income because they have no federal taxable income. The Court of Claims' former construction of § 3(3) adheres to the plain language of the statute, while the latter interpretation demonstrates the difficulty of applying that unambiguous language to the facts presented. Difficulty in applying plain language to a certain set of facts does not create a legitimate ground for engaging in judicial construction. *Id.*

argument it posited before the Court of Claims: that it would be "nonsensical" to read the statute as requiring S corporations to determine their business income by looking to their federal taxable income because it would result in plaintiff and S corporations avoiding all SBT liability since S corporations have no federal taxable income. It is true that S corporations have no federal taxable income at the federal level, as the parties concede. However, whether an S corporation has "federal taxable income" at the federal level is irrelevant because the plain language of the statute controls. As we have stated, the Legislature's intent is clear: If an entity is a "corporation" under § 3(3), its "business income" is calculated by reference to its "federal taxable income," however that number is computed, and it is not entitled to exclude casual transactions. See MCL 208.3(2); MCL 208.3(3).

Lastly, plaintiff argues that because defendant's written guidance and SBT return instructions instruct S corporations to calculate their business income on the basis of federal income deriving from business activities, just like partnerships, S corporations should not be considered corporations under § 3(3). This argument is also unavailing. Defendant's written guidance and SBT return instructions are not promulgated rules and do not carry the force of law. See *Faircloth v Family Independence Agency*, 232 Mich App 391, 403; 591 NW2d 314 (1998). And, in the absence of any ambiguity, they have no bearing on our interpretation of § 3(3). Additionally, we are not bound by an agency's interpretation of a statute, see *id.* at 406, nor are we of the opinion that our interpretation conflicts with the manner in which defendant has calculated plaintiff's "federal taxable income."

In light of our conclusion that all corporations under the plain language of § 3(3) of the SBTA must determine their business incomes by looking to their "federal taxable income," it is unnecessary for us to address the arguments raised regarding whether the asset sale constituted a "casual transaction" because a "corporation" is precluded from claiming the "casual transaction" exclusion. See *Guardian Photo, Inc, supra* at 279-280.

### IV. NEGLIGENCE PENALTY

Defendant next contends that the Court of Claims erred by determining that the negligence penalty was unlawful and by ordering a refund of the penalty amount. The Court of Claims' ruling in this regard was based largely upon its conclusion that because § 3(3) is ambiguous, plaintiff could not have been negligent when it claimed the casual transaction exclusion. However, because we have determined that § 3(3) is clear and unambiguous and plaintiff is ineligible for the casual transaction exclusion, the court's ruling regarding the negligence penalty was legally erroneous. Accordingly, we reverse the court's findings and conclusion with respect to the negligence penalty and remand for a new hearing.[8]

### V. CONCLUSION

Plaintiff has sought to compel this Court to correct

---

[8] We note that on appeal plaintiff argues that defendant should be deemed to have admitted that the penalty was unlawful because defendant failed to answer the relevant portion of plaintiff's complaint. See MCR 2.111(E). Defendant, on appeal, has relied upon stipulated exhibits, presumably presented before the Court of Claims, but not contained in the record before us, to argue that plaintiff was negligent and no reasonable cause existed to justify a waiver of the penalty. Because we are vacating the court's decision, we need not address these arguments, as they are more properly first addressed before the Court of Claims.

what plaintiff perceives to be the Legislature's oversight in failing to modify § 3(3) when federal tax law was amended. This would require this Court to read the term "corporation" to mean "C corporations" as the Court of Claims did. But we will not read additional requirements into a clear and unambiguous statute that are not within the Legislature's manifest intent. *Bay Co Prosecutor v Nugent*, 276 Mich App 183, 189; 740 NW2d 678 (2007). The language of § 3(3) is plain and unambiguous: All corporations, including S corporations, determine their business income by looking to their "federal taxable income," however that number may be computed. The Court of Claims' contrary conclusion is inapposite to our judicial role. It is not for the courts to debate the wisdom or policy behind the SBTA, but to construe the SBTA as it is written. *Nummer v Dep't of Treasury*, 448 Mich 534, 553 n 22; 533 NW2d 250 (1995); *Morgan v Taylor*, 434 Mich 180, 192; 451 NW2d 852 (1990). The courts of this state have consistently recognized that questions of Michigan tax policy are determined by the Legislature, not the courts. *Caterpillar, Inc v Dep't of Treasury*, 440 Mich 400, 414; 488 NW2d 182 (1992) ("[T]he judicial tribunals of the State have no concern with the policy of State taxation . . . .") (citation and quotation marks omitted); *Eagle Trucking Co v Dep't of Treasury*, 115 Mich App 667, 674; 321 NW2d 765 (1982) ("It is the Legislature's function, not this Court's, to determine the wisdom and policy reasons for imposing a particular tax."). Plaintiff's recourse is better directed at the Legislature, because we will not announce a holding that blurs the distinction between the Legislature's and the judiciary's respective roles. See *Melia v Employment Security Comm*, 346 Mich 544, 561-562; 78 NW2d 273 (1956).

Reversed in part. Remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.