*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MAPLE MANOR REHAB CENTER, LLC, and
MAPLE MANOR REHAB CENTER OF NOVI,
INC.,

        Plaintiffs-Appellants,

v

DEPARTMENT OF TREASURY,

        Defendant-Appellee

and

DEPARTMENT OF HEALTH AND HUMAN
SERVICES,

        Defendant.

FOR PUBLICATION
July 23, 2020
9:00 a.m.

No. 349168
Court of Claims
LC No. 18-000271-MT

Before: FORT HOOD, P.J., and JANSEN and TUKEL, JJ.

PER CURIAM.

In this case involving the alleged overpayment of the Medicaid Long-Term Care Quality Assurance Assessment (QAA) tax under Michigan's Medicare program, MCL 333.20161, plaintiffs Maple Manor Rehab Center, LLC (the Wayne facility) and Maple Manor Rehab Center of Novi, Inc. (the Novi facility) appeal as of right the Court of Claims' opinion and order granting summary disposition in favor of defendant, Department of Treasury (Treasury), under MCR 2.116(C)(4) and (C)(8) on the basis that the Treasury lacks authority to hear and decide plaintiffs' refund petition for the alleged QAA overpayment. On appeal, this Court is asked to decide whether the procedures for processing a petition for refund under the Revenue Act, MCL 205.01 *et seq.*, are applicable to a request for a refund for overpayment of the QAA tax. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs are post-acute care facilities that partake in Michigan's Medicare program and therefore are subject to the QAA. The QAA is collected in order to secure matching federal funds:

MCL 333.20161 and 42 CFR 433.68 provide that the QAA and matching federal funds are to "be used to finance Medicaid nursing home reimbursement payments." MCL 333.20161(11)(a). Collection of the QAA, along with matching federal funds, allows for greater Medicaid reimbursements to nursing homes through the Qualified Assurance Supplement (QAS) Medicaid payment. MCL 333.20161(11)(a). The QAA is assessed on the basis of the total number of days of patient care a nursing home or hospital long-term unit gives to non-Medicare patients. MCL 333.20161(11)(b). The QAA excludes from assessment days of care given to residents in assisted living beds and days of care for Medicare beneficiaries. See MCL 333.20161(11)(b). To determine the amount due, providers submit annual Medicare cost reports to the Michigan Department of Health and Human Services (the DHHS), which then calculates the facilities' QAA liability. For the years at issue, 2015, 2016, and 2017, plaintiffs timely remitted monthly QAA payments to the DHHS.

MCL 333.20161 vests authority in the DHHS to implement and administer the QAA. Specifically, the DHHS has the authority to implement policies and procedures and impose penalties for nonpayment. MCL 333.20171; MCL 333.20172; MCL 333.20161(11)(f). Additionally, the DHHS must administer the QAA in accordance with federal law and regulations, and is required to seek annual approval from the Centers for Medicare and Medicaid Services (CMS), a federal agency within the United States Department of Health and Human Services. MCL 333.20161(11)(c); MCL 333.20161(11)(e); 42 CFR 433.68(e).

> As aptly explained by the Court of Claims:
>
> The QAA rates charged to all providers under MCL 333.20161 are dependent upon information provided in each individual provider's cost reports. As averred by John Donaldson, a director of the Long-Term Care Reimbursement and Audit Division within [the] DHHS, "any changes to an individual provider's cost reports would impact the tax rates for all providers in the state of Michigan to ensure adequate funding for the QAS program. . . ." [The] DHHS sends written notice to each provider of the provider's upcoming QAA tax. The rates are based on information contained in the prior year's cost reports. According to the notices issued by [the] DHHS in the instant case, an entity has "10 calendar days from the date of this notice to notify [the DHHS] in writing of a disagreement with the total number of non-Medicare days of care rendered indicated above. Failure to respond within this 10[-]day time period will result in any changes being made on a prospective basis only."

In the Court of Claims, the DHHS submitted documentary evidence to explain that the 10-day time period is rooted in the fact that the amount of federal money received is dependent on state-wide QAA information. Any change to an individual provider's QAA amounts affects the rates for all providers in Michigan. Additionally, the DHHS is required to obtain an annual waiver from CMS to impose the QAA, and the DHHS must have final and accurate information at the time it seeks that waiver. Accordingly, in administering the QAA, the DHHS only gives prospective effect to late QAA challenges.

Turning to the instant matter, in October 2017, plaintiffs discovered a clerical error in their annual reporting of QAAs to the DHHS: they had overpaid. Specifically, the Wayne facility

included days of care for residents in assisted living and Medicare patients in 2015, 2016, and 2017, resulting in an overpayment of $227,419. The Novi facility made the same mistake in 2016 and 2017, resulting in an overpayment of $237,438. In December 2017, plaintiffs' counsel sent a letter to the DHHS explaining the errors in the cost reports for the years at issue and asking the DHHS to correct the non-Medicare days erroneously reported.

In a January 2018 letter, the DHHS acknowledged the mistake and corrected it on a prospective basis, but did not refund any of the overpayments. The DHHS reasoned that the error was reported outside of the audit period, and therefore only a prospective adjustment could be made. Plaintiffs did not seek judicial review of the denial of the relief requested from the DHHS. Rather, in September 2018, plaintiffs filed a petition with the Treasury seeking a refund of their QAA overpayments per MCL 205.30 for fiscal years 2015, 2016, and 2017. In their petition, plaintiffs correctly noted that the Treasury holds the QAA funds under MCL 333.20161(11)(g), and that the DHHS had not disputed plaintiffs' mistakes and resultant overpayments of QAAs. In a letter dated October 19, 2018, the Treasury denied plaintiffs' request, explaining:

> Please be advised that the Department of Treasury has no jurisdiction in this matter and will not process or take action to review Maple Manor's petition. The Quality Assurance Assessment which is the subject of Maple Manor's Petition is not administered under the Revenue Act, and MCL 205.30 does not apply.

Following the Treasury's refusal to issue a refund, plaintiffs filed a complaint in the Court of Claims alleging that Treasury had violated MCL 205.30 by refusing to process plaintiffs' petition for a refund.[1] In lieu of an answer, the Treasury moved for summary disposition arguing that it did not have authority to issue plaintiffs a refund for overpayment of their QAAs for the relevant tax years. It explained that the Revenue Act only applies to the Treasury's decisions that result from its administration of laws that it has the authority to administer. Where Treasury does not administer the QAA, and relief from a wrongly assessed QAA is a decision of the DHHS, Treasury argued that it made no decision appealable under the Revenue Act. Further, Treasury noted that it was merely a custodian of the funds and that plaintiffs' claim was an improper collateral attack on the DHHS' prior decision. In response, plaintiffs argued that the QAA *is* a "tax" subject to the Revenue Act, and because the Revenue Act's procedures apply to all taxes, the Act's procedures applied here.

---

[1] Plaintiffs also named the DHHS in their complaint, and alleged that the DHHS and Treasury were unjustly enriched as a result of plaintiffs' overpayment of QAAs and the subsequent failure to issue a refund. The Court of Claims summarily dismissed this claim against both the DHHS and Treasury, reasoning that MCL 600.6431(1) required plaintiffs to provide a signed, verified notice of intent to defendants, or file their claim within the Court of Claims, within one year of the accrual of their unjust enrichment claim. Plaintiffs failed to do so, and therefore their unjust enrichment claim was untimely and dismissal was required under MCR 2.116(C)(7). As noted, plaintiffs did not pursue judicial review of the DHHS' decision to deny plaintiffs' request for a refund.

The Court of Claims granted Treasury's motion for summary disposition without oral argument. LCR 2.119(A)(5). In its written opinion and order, the Court of Claims first noted that the Revenue Act's procedures apply to all taxes unless otherwise provided. Unlike other tax statues that specifically state that the Revenue Act applies, Treasury has no express authority to administer the Public Health Code in which MCL 333.20161 is found. The Court of Claims then examined whether the QAA, "by virtue of being a 'tax' is subject to the refund procedures of the Revenue Act by way of MCL 205.20, or whether the role played by [the] DHHS in the administration and enforcement of the tax compel a different result." Relying on the plain language of MCL 333.20161, the Court of Claims concluded:

> that the QAA is not subject to the Revenue Code's refund procedures because Treasury has plainly not been given authority over the administration and enforcement of the QAA tax. The unambiguous language of MCL 333.20161 places responsibility for all aspects of administering the tax squarely with [the] DHHS, not with Treasury. This is exemplified by MCL 333.20161(f), which declares that if a nursing home fails to pay the required QAA tax, [the] DHHS may, at its discretion, "refer for collection to the department of treasury past due amounts consistent with" MCL 205.13. Stated otherwise, Treasury's involvement in the QAA is limited – aside from the state treasury serving as repository [for] QAA funds – and its invoked only upon [the] DHHS's referring a specific matter to Treasury. The limited role of Treasury under MCL 333.20161 stands in contrast to Treasury's involvement over other tax matters that are otherwise within its authority and over which it need not be invited to act by another agency. See, e.g., MCL 205.1.

As additional support, the Court of Claims noted that MCL 333.20161 requires the DHHS to comply with federal law, while no such requirement applies to Treasury, meaning that to grant Treasury authority over the QAA would create the potential that the DHHS may run afoul of federal law. Accordingly, the Court of Claims concluded that Treasury lacked authority to hear and decide plaintiffs' refund petition and granted summary disposition in its favor under MCR 2.116(C)(4) and (C)(8). This appeal followed.

## II. STANDARD OF REVIEW

Summary disposition is proper under MCR 2.116(C)(4) when "[t]he court lacks jurisdiction of the subject matter." MCR 2.116(C)(4). Whether a lower court has subject-matter jurisdiction is a question of law that this Court reviews de novo. *In re Tuscola Co Treasurer*, 317 Mich App 688, 694; 895 NW2d 569 (2016). "[A lower] court's decision on a motion for summary disposition based on MCR 2.116(C)(4) [is reviewed] de novo to determine if the moving party was entitled to judgment as a matter of law, or if affidavits or other proofs demonstrate there is an issue of material fact." *Southfield Ed Ass'n v Southfield Public Sch Bd of Ed*, 320 Mich App 353, 373; 909 NW2d 1 (2017) (citation and quotations omitted).

A motion under MCR 2.116(C)(8) tests the legal sufficiency of the complaint. "A motion under MCR 2.116(C)(8) may be granted only where the claims alleged are so clearly unenforceable as a matter of law that no factual development could possibly justify recovery." *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999) (citation and quotation marks omitted). The

court considers only the pleadings in a light most favorable to the nonmoving party, accepting as true all well-pleaded factual allegations. *Id.* Again, review is de novo. *Capitol Props Group, LLC v 1247 Ctr Street, LLC*, 283 Mich App 422, 425; 770 NW2d 105 (2009)

Additionally, questions of statutory interpretation are reviewed de novo. *GMC v Dep't of Treasury*, 290 Mich App 355, 369; 803 NW2d 698 (2010).

## III. ANALYSIS

On appeal, plaintiffs maintain that the QAA is a tax subject to the credit and refund provisions set forth in MCL 205.30, and that Treasury erred by refusing to process their refund petition for overpayment of QAAs for tax years 2015, 2016, and 2017. We disagree, and conclude the Court of Claims lacked subject-matter jurisdiction because Treasury did not issue an adverse decision with respect to plaintiffs' petition for a refund. Further, the QAA 'tax' is not subject to the refund provision, MCL 205.30, so as to render Treasury's refusal to process a refund an appealable decision conferring jurisdiction on the Court of Claims.

Although plaintiffs frame the issue on appeal as whether the Court of Claims erred by finding that the Revenue Act does not apply to the QAA, implicit in their argument is a presumption that Treasury's response to plaintiffs' petition was an appealable decision under the Revenue Act. Indeed, whether the Revenue Act's refund provision applies to the QAA and whether Treasury has the authority to decide a petition for refund of the QAA are effectively one and the same. To this end, plaintiffs posit that Treasury's response—its letter refusing to process the claim for lack of authority to do so—was an appealable determination that conferred jurisdiction on the Court of Claims. We disagree.

Contrary to plaintiffs' characterization of the record, Treasury did not issue a decision on plaintiffs' petition for a refund. Instead, *the DHHS* issued two prior letters denying plaintiffs' request for a QAA refund. Later, upon receipt of plaintiffs' petition for a refund, Treasury sent plaintiffs a letter noting that it did not have the authority to issue a QAA refund and informed plaintiffs that it had referred the matter to the DHHS. Under MCL 205.22(1), "[a] taxpayer aggrieved by an assessment, decision, or order of the department may appeal the contested portion of the assessment, decision, or order to . . . the court of claims within 90 days after the assessment, decision, or order." Under the present circumstances, the DHHS, not the Department of Treasury, made the decision that aggrieved plaintiffs by denying them a refund of their QAA payments. Plaintiffs never received an adverse decision from Treasury and, therefore, the Revenue Act did not confer subject-matter jurisdiction on the Court of Claims. Dismissal for lack of subject-matter jurisdiction under MCR 2.116(C)(4) was proper.[2]

---

[2] In concluding that the QAA is not subject to the Revenue Act's appellate procedures and granting the motion under MCR 2.116(C)(4), the Court of Claims relied on *Teddy 23 LLC v Michigan Film Office*, 313 Mich Ap 557; 884 NW2d 799 (2015). There, the plaintiff sued Treasury for the Michigan Film Office's denial of a tax credit. *Id.* at 560-562. On appeal, this Court affirmed the Court of Claims' decision that it lacked subject-matter jurisdiction over the matter because the

In an apparent attempt to bootstrap subject-matter jurisdiction onto the court, plaintiffs claim that Treasury's letter effectively operated as a denial of a refund because the Revenue Act's refund provision, MCL 205.30, applies to the QAA. According to plaintiffs, the Court of Claims erred by concluding that the QAA is not subject to the Revenue Act's refund provision, MCL 205.30, and by granting summary disposition under MCR 2.116(C)(4) and (8). In support, plaintiffs rely on the language in MCL 333.20161 defining the QAA as a "tax" and MCL 205.20, which provides:

> Unless otherwise provided by specific authority in a taxing statute administered by the department, all taxes shall be subject to the procedures of administration, audit, assessment, interest, penalty, and appeal provided in sections 21 to 30.

By plaintiffs' logic, because no specific authority provides that the QAA is not subject to the Revenue Act, the QAA is subject to the procedures for administration, audit, assessment, interest, penalties, and appeal in MCL 205.21 through MCL 205.30.

Plaintiffs' argument raises an issue of statutory interpretation. When construing the meaning of statutory language, this Court's goal is to discern the Legislature's intent. *TMW Enters v Dep't of Treasury*, 285 Mich App 167, 172; 775 NW2d 342 (2009). The best and most reliable indicator of that intent is the plain language used and therefore the starting point for analysis is the language of the text itself. *Id*. This Court must view the statutory language in context, considering "both the plain meaning of the critical word or phrase as well as its placement and purpose in the statutory scheme." *Sun Valley Foods Co v Ward*, 460 Mich 230, 237; 596 NW2d 119 (1999) (citation and quotations omitted). Further, "[s]tatutes [relating to the same subject are] *in pari materia* . . . [and] should, so far as reasonably possible, be construed in harmony with each other, so as to give force and effect to each[.]" *Rathbun v State*, 284 Mich 521, 544; 280 NW 35 (1938). If two statutes lend themselves to a construction that avoids conflict, that construction should control. *People v Webb*, 458 Mich 265, 274; 580 NW2d 884 (1998).

Plaintiffs' reading of the applicable statutes is too simplistic. It is true that MCL 333.20161(14) defines QAA as a "tax," and absent exception in a tax statute administered by Treasury, MCL 205.30 directs that "all taxes" are subject to the Revenue Act. Plaintiffs' also correctly assert that MCL 333.20161 contains no language expressly stating that the QAA is not subject to the Revenue Act. However, lack of such an exemption is not definitive. This is because the statutory schemes must be read together as a harmonious whole to accurately discern the Legislature's intent. *Rathbun*, 284 Mich at 544; *Webb*, 458 Mich at 274. Contrary to this well-established rule of construction, plaintiffs' analysis selectively reads MCL 333.20161(14) and

---

Department of Treasury had not issued an adverse assessment, decision, or order; rather, the Michigan Film Office had issued the adverse decision. *Id*. at 566. Plaintiffs here assert that *Teddy 23* is distinguishable because, unlike in that case, plaintiffs are appealing the Department of Treasury's refusal to issue a refund, which is an adverse decision of the Department of Treasury. In attempting to distinguish *Teddy 23*, however, plaintiffs rely on the same mischaracterization of the record that we have already rejected. The Court of Claims did not err by analogizing this matter to *Teddy 23*.

MCL 205.20 in a vacuum to support their preferred result. Explanation of these statutory schemes as a whole is therefore necessary to discern the Legislature's intent.

MCL 333.20161 clearly vests the DHHS with the authority to assess and collect the QAA, MCL 333.20161(1)(g) and (11), assess penalties for nonpayment, MCL 333.20161(11)(f), deposit QAA taxes in a fund held by the Department of Treasury, MCL 333.20161(10), and refer for collection to Treasury unpaid amounts, consistent with MCL 205.13 and MCL 333.20161(11)(f). In carrying out these duties, the DHHS is bound to comply with federal law. MCL 333.20161(11)(e). Consequently, the DHHS, in administering all aspects of the QAA, including audits and refunds, must undertake federally-compliant procedures. Of further note, MCL 333.20161 references Treasury in a limited capacity, as a depository for the QAA funds and as a collection agent subject to the DHHS's authorization. MCL 333.20161(10) and (11)(f).

The Revenue Act, on the other hand, gives Treasury express authority to administer and enforce certain enumerated tax statutes. MCL 333.20161 is not one of those enumerated statutory provisions. MCL 205.13(1). The Act further provides that procedures for assessment, collection, audits, penalties, interest, and refunds, MCL 205.21–MCL 205.30, are applicable to "all taxes," unless otherwise provided for in a tax statute administered by Treasury, MCL 205.20. Unlike MCL 333.20161, there is no requirement that the Revenue Act's procedures comply with federal law.

Superficially, a conflict appears to exist within these schemes: the Revenue Acts grants Treasury the authority to administer *all taxes*, unless an exception exists, while the QAA is defined as a tax and no exception exempts it from the Revenue Act. However, applying the Revenue Act to the QAA would render administration of the QAA inconsistent with federal law and inconsistent with the explicit requirements found in MCL 333.20161; specifically, the requirement that the DHHS, not Treasury, administer and enforce the QAA. Yet, reading these schemes together in order to give force and effect to each, and in a manner to avoid conflict, compels the conclusion that these statutes operate separately. Accordingly, we conclude that the QAA is not subject to the Revenue Act except where the Legislature has specifically provided a limited role for Treasury.

Additional support for this conclusion can be found in the principle of statutory construction that "[t]o the extent that statutes that are *in pari materia* are unavoidably in conflict and cannot be reconciled, the more specific statute controls." *Mich Deferred Presentment Servs Ass'n v Ross*, 287 Mich App 326, 334; 788 NW2d 842 (2010). Here, the Revenue Act provides a statutory scheme generally applicable to all taxes, while MCL 333.20161 provides a specific, comprehensive, federally-compliant scheme applicable only to the QAA. Under these circumstances, the statute specific to the QAA is an exception to the Revenue Act and MCL 333.20161 must control the process for obtaining a refund. *People v Arnold*, 502 Mich 438, 472; 918 NW2d 164 (2018) (citation and quotations omitted) ("When a general intention is expressed, and also a particular intention, which is incompatible with the general one, the particular intention shall be considered an exception to the general one.") Indeed, the Legislature, in enacting MCL 333.20161, is presumed to have known the laws relating to the same subject (here the Revenue Act), to have considered MCL 333.20161's effect and relation to the Revenue Act, and to have intentionally drafted MCL 333.20161 in a comprehensive and detailed manner in order to supersede application of the Revenue Act's provisions to the administration of the QAA. See *People v Feezel*, 486 Mich 184, 211; 783 NW2d 67 (2010) (noting that the Legislature is presumed

to know the law); Cf. *People v Idziak*, 484 Mich 549, 569; 773 NW2d 616 (2009) (Comprehensive, specific, and detailed legislation supersedes the common law pertaining to the same subject). Consequently, it must be assumed that the clear intent of the Legislature in drafting MCL 333.20161 was to leave no room for application of MCL 205.30 (or for the Revenue Act generally except where specifically provided) to the administration of the QAA.

Moreover, as the Court of Claims recognized, had the Legislature intended for the Revenue Act to apply to the QAA, it could have specifically stated so, as it has done in other statutes. See MCL 205.433(1) (indicating that the Revenue Act applies to the administration of the Tobacco Products Tax Act); MCL 208.80(1) (providing that the Single Business Tax Act (SBTA) is subject to administration under the Revenue Act). The clear expression in other tax statutes that the Revenue Act applies, and the absence of such language in MCL 333.20161, further supports our conclusion that the Legislature did not intend for the Revenue Act to apply to the QAA. *MidAmerican Energy Co v Dep't of Treasury*, 308 Mich App 362, 370; 863 NW2d 387 (2014) (citation and quotations omitted) ("A general principle of statutory construction is the doctrine of *expressio unius est exclusio alterius*, which means the express mention of one thing implies the exclusion of another.") By this same logic, that the Legislature expressly gave Treasury a limited role as a depository and collection agent implies that the Legislature did not intend to grant Treasury the expansive powers it possesses under the Revenue Act with respect to the QAA.

On appeal, plaintiffs identify several purported errors in the Court of Claims' analysis. Plaintiffs first argue that the Court of Claims did not rely on the statutory schemes' plain language or any legal authority, rather it relied on its "own subjective theory" of how the statutes should operate. However, our review of the Court of Claims' opinion and order shows that it did rely on the plain language of the statutory schemes, and not its own policy preferences. After examining both statutory schemes, the court found that the DHHS had broad authority over administering the QAA, and Treasury's authority under the Revenue Act with respect to the QAA was limited. The record plainly belies plaintiffs' assertion.

Plaintiffs also argue that the Court of Claims erred by relying on *K & W Wholesale, LLC v Department of Treasury*, 318 Mich App 605; 899 NW2d 432 (2017) and *Tyson Foods, Inc v Department of Treasury*, 276 Mich App 678; 741 NW2d 579 (2007), because neither case supported its conclusion that "a 'tax' is not subject to the Revenue Code's provisions simply by virtue of being a tax." However, plaintiffs fail to appreciate that the Court of Claims relied on these cases to illustrate where, unlike MCL 333.20161, the Legislature has expressly bestowed authority on Treasury for taxing schemes outside the Revenue Act by specifically stating that the Revenue Act applies. See *K & W Wholesale, LLC*, 318 Mich App at 613 (noting that the Tobacco Tax Products Act provides that "[t]he tax imposed by this act shall be administered by the revenue commissioner pursuant to" the Revenue Act unless a conflict exists, in which case the Tobacco Tax Products Act will control); *Tyson Foods, Inc*, 276 Mich App at 684-685 (indicating that the SBTA provides that administration of the single business tax is governed by the Revenue Act). The Legislature did not provide a similar pronouncement with respect to the QAA.

Plaintiffs have failed to provide a persuasive interpretation of the relevant statutory schemes at issue that would lead us to conclude that the refund provision of the Revenue Act applies to the QAA. Accordingly, we cannot conclude that Treasury had authority to issue a decision with respect to plaintiffs' petition for refund. Absent an adverse decision from Treasury,

the Court of Claims lacked subject-matter jurisdiction and summary disposition was required under MCR 2.116(C)(4) and (C)(8).

Affirmed.

/s/ Karen M. Fort Hood
/s/ Kathleen Jansen
/s/ Jonathan Tukel