ONEIDA CHARTER TOWNSHIP v CITY OF GRAND LEDGE

Docket No. 277093. Submitted October 7, 2008, at Grand Rapids. Decided February 12, 2009, at 9:00 a.m.

Oneida Charter Township and four of its residents brought an action in the Eaton Circuit Court against the city of Grand Ledge, seeking a declaratory judgment regarding the continued validity of a 1980 agreement between the township and the city whereby the city directly supplies water to township residents and bills them. Pursuant to the agreement, the township residents pay a rate twice that which city residents pay for the same service. The plaintiffs alleged that MCL 123.141, which authorizes municipalities to contract for the sale of water outside their territorial limits, mandates that the rate charged be equal to the actual cost of service. The court, Thomas S. Eveland, J., determined that the provisions of MCL 123.141(2) did not apply to the city and that the provisions of MCL 123.141(3) were not binding on the city. The court concluded that the 1980 agreement remains valid and enforceable. The individual plaintiffs appealed.

The Court of Appeals *held*:

1. The general authority governing the rates that can be charged is set forth in MCL 123.141(2), which forbids the price to exceed the actual cost of service as determined under the utility basis of ratemaking. However, the city qualifies under the exception to that requirement stated in MCL 123.141(2) because it is not a contractual customer of another water department and it serves less than one percent of the population of the state. Therefore, subsection 2, standing alone, would permit the city to charge the township residents more than the actual cost of service.

2. Although subsection 2 is the general charging scheme, a more specific scheme is set forth in MCL 123.141(3), which requires that the retail rate charged to the inhabitants of a township that is a contractual customer as provided in subsection 2 shall not exceed the actual cost of providing the service. In this case, the township is a contractual customer of the city and the city sells the water to the ultimate consumers at retail. Where a statute contains a specific statutory provision and a related, but more general, provision, the specific one controls. A municipality selling

water extraterritorially directly to individual inhabitants of a contractual customer must charge actual cost pursuant to MCL 123.141(3), regardless of whether the municipality is exempt from the provisions of MCL 123.141(2). The judgment of the circuit court must be reversed and the case must be remanded to the circuit court for further proceedings.

Reversed and remanded.

PUBLIC UTILITIES — MUNICIPAL CORPORATIONS — WATER RATES.

A municipality that, pursuant to MCL 123.141(1), is selling water extraterritorially directly to individual inhabitants of another municipality pursuant to a contract with that municipality must, pursuant to MCL 123.141(3), charge the individual inhabitants the actual cost of providing the service.

*James L. Shonkwiler* for David M. Lee, Robert E. Ludlum, Lawrence J. Emery, and James Brandt.

*J. Richard Robinson, P.C.* (by *J. Richard Robinson* and *Shane Bolley*), for the city of Grand Ledge.

Before: MARKEY, P.J., and SAWYER and K. F. KELLY, JJ.

PER CURIAM. This case requires us to decide whether MCL 123.141, which authorizes municipalities to contract for the sale of water outside their territorial limits, mandates that rates charged for the sale of water directly to extraterritorial individual inhabitants of a "contractual customer" be equal to the actual cost of service. The court below determined that it does not, and plaintiffs now appeal as of right. We disagree and hold that a municipality selling water extraterritorially directly to individual inhabitants of a "contractual customer" must charge actual costs pursuant to MCL 123.141(3).

I. BASIC FACTS

This case arises out of a dispute over the water rates that the city of Grand Ledge charges residents of

Oneida Charter Township (Oneida) who reside outside the territorial limits of Grand Ledge. In 1980, Oneida sought to expand residential development by contracting with Grand Ledge for the purchase of sanitary sewer and potable water services. To that end, on October 27, 1980, Grand Ledge and Oneida entered into a water agreement (1980 agreement) under which Grand Ledge supplies potable water and sanitary sewer services to Oneida residents within a designated area. Pursuant to this agreement, Grand Ledge delivers water directly to each individual Oneida resident approved for water service and directly bills each individual on the basis of his or her water consumption.[1] Moreover, it mandated that each new resident in the designated area be required to connect to the water system.[2] While Oneida is the contracting party under the 1980 agreement, Oneida does not receive, nor is it billed for any water services under this arrangement; only its residents receive and are billed for water services. Although Oneida owns the water facilities

---

[1] Stated more specifically, Grand Ledge provides each township resident approved for water service with a water meter. Then, on a monthly basis, city employees read each township resident's water meter, compute the amount of water consumed, calculate the rate to be charged, and mail a billing to each individual township customer for his or her usage.

[2] Section 6 provides:

> TOWNSHIP shall adopt such Ordinances to take such other legal action as may be necessary to require each new user within the Designated Service Area to connect to both the sanitary sewer system and the water system, as required by the terms of this Agreement.

Section 14 provides, in relevant part:

> All potential TOWNSHIP users shall receive written notification from TOWNSHIP at such time as sanitary sewers and water mains are available for their use, and shall be required to hook up to the sewer system and begin service within thirty (30) days after such notification.

used to deliver the water to township users, Grand Ledge assumes all maintenance and operation of these facilities. With respect to the rates charged for water services, § 13 of the 1980 agreement states:

> TOWNSHIP users shall be required to pay a Sewer Tap Fee in the same amount as that currently being charged CITY users at the time of issuance of said permit. TOWNSHIP users shall be required to pay for water service, including tapping the main and/or furnishing a water meter, in amounts as may be established by CITY Ordinances pertaining to users outside CITY limits as the same may then exist or from time to time be amended, *which charges shall be at least twice the amount currently being charged CITY users for the same service.* Rates for sewer and water service, permit fee, any other charges, rates and manner of collection and billing thereof shall be in accordance with the then effective Ordinances of CITY as they pertain to users outside the corporate limits of CITY. [Emphasis added.]

Since the inception of the agreement, Oneida residents have paid for Grand Ledge's water service at a rate twice that paid by Grand Ledge residents for the same service. This rate is based exclusively on the 1980 agreement, not on the actual cost of the service.

At the time when the parties drafted the 1980 agreement, it complied with MCL 123.141, which then stated:

> Municipal corporations having authority by law to sell water outside their territorial limits, hereinafter referred to as corporations, may contract for such sale with cities, villages or townships having authority to provide a water supply for their inhabitants, *but the price charged shall not be less than nor more than double that paid by customers within their own territory.* The price charged may be more than double that paid by consumers within their own territory if the water is delivered to a city, village or township lying outside the county within which the corpo-

rations are situated, and lying more than 10 miles beyond the territorial limits of the corporations. Any price charged that is more than double shall bear a reasonable relationship to the service rendered. [1917 PA 34, as amended by 1957 PA 53 (emphasis added).]

But, in 1981, just eight months after Grand Ledge and Oneida entered into the 1980 agreement, the Legislature amended the statute, removing the language permitting municipal corporations to charge water consumers outside their territories double that charged to their own inhabitants. MCL 123.141 now reads, in pertinent part:

(1) A municipal corporation, referred to in this act as a corporation, authorized by law to sell water outside of its territorial limits, may contract for the sale of water with a city, village, township, or authority authorized to provide a water supply for its inhabitants.

(2) The price charged by the city to its customers shall be at a rate which is based on the actual cost of service as determined under the utility basis of ratemaking. This subsection shall not remove any minimum or maximum limits imposed contractually between the city and its wholesale customers during the remaining life of the contract. This subsection shall not apply to a water system that is not a contractual customer of another water department and that serves less than 1% of the population of the state. This subsection shall take effect with the first change in wholesale or retail rate by the city or its contractual customers following the effective date of this subsection. Any city that has not adjusted rates in conformity with this subsection by April 1, 1982 shall include in the next ensuing rate period an adjustment to increase or decrease rates to wholesale or retail customers, so that each class of customer pays rates which will yield the same estimated amount of revenue as if the rate adjustment had been retroactive to April 1, 1982. . . .

(3) The retail rate charged to the inhabitants of a city, village, township, or authority which is a contractual

customer as provided by subsection (2) shall not exceed the actual cost of providing the service.

In December 2005, plaintiffs[3] filed suit against Grand Ledge, seeking declaratory relief regarding water service rates under the 1980 agreement. Specifically, plaintiffs contended that the rates must be equal to "actual cost" as a matter of law under MCL 123.141.[4] Plaintiffs moved for partial summary disposition without success, and the matter was tried before the trial court without a jury.

At trial, plaintiffs argued that the statute envisions two different methods of supplying water. The first method, controlled by subsection 2, is a "wholesale" method whereby a municipality sells water to another municipality, which, in turn, sells the water to its inhabitants. The second is a "retail" method controlled by subsection 3, whereby the selling municipality sells directly to the other municipalities' inhabitants. According to plaintiffs, the present situation is a retail method and, therefore, MCL 123.141(2) is inapplicable and Grand Ledge must bill at actual cost pursuant to MCL 123.141(3). Conversely, Grand Ledge argued that the exemption in subsection 2 applies because it is not a contractual customer of another water department

---

[3] Plaintiffs-appellants David M. Lee, Robert E. Ludlum, Lawrence J. Emery, and James Brandt (hereafter plaintiffs) are individual residents of Oneida who reside in the designated service area created under the 1980 agreement. Plaintiff Oneida Charter Township did not join in this appeal.

[4] With respect to the rate-setting clause of the 1980 agreement, plaintiffs' complaint also alleged that the rates are contrary to the 1980 agreement's plain language, that the 1980 agreement is void because it lacks mutuality, and that the rate-setting clause violates the Equal Protection Clause of both the United States Constitution and the Michigan Constitution because it is discriminatory in nature. In addition, plaintiffs raised two other counts seeking declaratory relief in regard to the connection fees and exclusive provider clauses of the agreement. Plaintiffs do not raise any of these issues on appeal.

and it serves less than one percent of the state's population. It follows, according to Grand Ledge, that subsection 3 also does not apply because application of that subsection would render the exemption language in subsection 2 nugatory.

The trial court found in favor of Grand Ledge. The court characterized the statute as "at best, confusing" and noted that the Legislature intended that the 1981 amendment address Detroit's "dilemma of having to charge communities to which it was providing water double the city's rates even though the cost was substantially less; and by the same token having to charge far-reaching communities less than its actual costs." On the basis of this reasoning, the trial court concluded that subsection 2 of the statute does not apply to Grand Ledge because Grand Ledge is not a "contractual customer of another water department and only provides water outside its boundaries to a portion of Oneida Township." The trial court, again, relying on the legislative history, also found that subsection 3 is not binding on Grand Ledge because that subsection applies to "contractual customers" referenced in subsection 2 and was intended to assure that townships that purchase water from another system cannot charge their own inhabitants a rate above actual costs. Under this reasoning, the trial court concluded that the 1980 agreement remains valid and enforceable.

This appeal followed, limited to the issue whether MCL 123.141 mandates that Grand Ledge charge Oneida residents the actual cost of the water service it provides. For the purpose of this appeal and in lieu of providing a transcript to this Court of the lower court proceedings,[5] the parties stipulated a statement of facts, including:

---

[5] MCR 7.210(B)(1)(e).

[Grand Ledge] is a municipal corporation authorized to sell water outside of its territorial limits.

[Grand Ledge] is not a contractual customer of another water department. [Grand Ledge's] water system serves less than 1% of the population of the state. [Oneida] is a contractual customer of [Grand Ledge] by virtue of the Agreement of 1980. [Oneida's] water system serves less than 1% of the population of the state.

[Grand Ledge] water consumed by [Oneida] inhabitants is measured by a meter provided by [Grand Ledge]. [Grand Ledge] bills [Oneida] water users who make payment directly to [Grand Ledge]. [Grand Ledge] does not sell water to [Oneida] for resale by [Oneida] to individual [Oneida] users.

## II. STANDARD OF REVIEW

We review matters of statutory construction de novo. *Casco Twp v Secretary of State*, 261 Mich App 386, 390; 682 NW2d 546 (2004).

## III. PRINCIPLES OF STATUTORY CONSTRUCTION

When interpreting the meaning of a statute, our main objective is to ascertain and give effect to the Legislature's intent. *Id.* The first step is to determine whether the language of the statute is plain and unambiguous. *United Parcel Service, Inc v Bureau of Safety & Regulation*, 277 Mich App 192, 202; 745 NW2d 125 (2007). If the language is unambiguous, we must assume that the Legislature intended its plain meaning and, accordingly, we must apply the statute's language as written. *Roberts v Mecosta Co Gen Hosp*, 466 Mich 57, 63; 642 NW2d 663 (2002). In such instances, we must assume that every word has some meaning and we must give effect to every provision, if possible. *Danse Corp v Madison Hts*, 466 Mich 175; 644 NW2d 721 (2002). In doing so, we are to give words their plain and

ordinary meaning, unless otherwise defined by the Legislature. MCL 8.3a; *Ford Motor Co v Woodhaven*, 475 Mich 425, 438-439; 716 NW2d 247 (2006); *Village of Holly v Holly Twp*, 267 Mich App 461, 470; 705 NW2d 532 (2005). We may not speculate regarding the Legislature's probable intent, nor may we "inquire into the knowledge, motives, or methods of the Legislature." *Fowler v Doan*, 261 Mich App 595, 599; 683 NW2d 682 (2004). It is only when the statute's language is ambiguous that this Court is permitted to look beyond the statute's language to determine the Legislature's intent. *Casco Twp, supra* at 391.

We must not consider the statute's language in isolation; rather, we must consider each word and phrase in light of its placement and purpose within the statutory scheme. *Herman v Berrien Co*, 481 Mich 352, 366; 750 NW2d 570 (2008). Subsections of a statute are not to be read discretely, but as part of a whole. *Lansing Mayor v Pub Service Comm*, 470 Mich 154, 167-168; 680 NW2d 840 (2004). "[T]he entire act must be read, and the interpretation to be given to a particular word in one section arrived at after due consideration of every other section so as to produce, if possible, a harmonious and consistent enactment as a whole." *Grand Rapids v Crocker*, 219 Mich 178, 182-183; 189 NW 221 (1922); see also *Macomb Co Prosecutor v Murphy*, 464 Mich 149, 159; 627 NW2d 247 (2001) (provisions must be read in the context of the entire statute).

Finally, we are mindful that "it is a settled rule of statutory construction that where a statute contains a specific statutory provision and a related, but more general, provision, the specific one controls." *In re Haley*, 476 Mich 180, 198; 720 NW2d 246 (2006), citing *Gebhardt v O'Rourke*, 444 Mich 535, 542-543; 510 NW2d 900 (1994).

IV. ANALYSIS

Before the instant case, neither this Court nor our Supreme Court has had the opportunity to determine the circumstances under which MCL 123.141 requires a municipal corporation selling water extraterritorially to sell that water at actual cost. Accordingly, this issue of first impression requires us to interpret the meaning of the language in MCL 123.141(2) that exempts certain water systems from the actual cost provision of that subsection and its relationship to the language of MCL 123.141(3).

A. THE STATUTORY SCHEME

In enacting the current version of MCL 123.141, "the Legislature intended that municipal water rates more accurately reflect the actual cost of service when it eliminated the artificial limits imposed by the previous version of MCL 123.141." *City of Novi v Detroit*, 433 Mich 414, 430-431; 446 NW2d 118 (1989). As set forth earlier in this opinion, the relevant portions of MCL 123.141 provide:

> (1) A municipal corporation, referred to in this act as a corporation, authorized by law to sell water outside of its territorial limits, may contract for the sale of water with a city, village, township, or authority authorized to provide a water supply for its inhabitants.
>
> (2) The price charged by the city to its customers shall be at a rate which is based on the actual cost of service as determined under the utility basis of ratemaking. *This subsection shall not remove any minimum or maximum limits imposed contractually between the city and its wholesale customers during the remaining life of the contract. This subsection shall not apply to a water system that is not a contractual customer of another water department and that serves less than 1% of the population of the state.* This subsection shall take effect with the first change in wholesale or retail rate by the city or its contractual customers following the effective date of this subsection. Any city that

has not adjusted rates in conformity with this subsection by April 1, 1982 shall include in the next ensuing rate period an adjustment to increase or decrease rates to wholesale or retail customers, so that each class of customer pays rates which will yield the same estimated amount of revenue as if the rate adjustment had been retroactive to April 1, 1982. . . .

(3) The *retail rate* charged to the inhabitants of a city, village, township, or authority *which is a contractual customer as provided by subsection (2)* shall not exceed the actual cost of providing the service. [Emphasis added.]

We are of the view that the language of MCL 123.141 is plain and unambiguous despite the fact that it may be difficult to apply to the specific factual situation presented here.[6] While "[w]hat is 'plain and unambiguous' often depends on one's frame of reference," *Shiffer v Gibraltar School Dist Bd of Ed*, 393 Mich 190, 194; 224 NW2d 255 (1974), if the language is unambiguous, it must be applied as written despite any difficulties presented.[7] Thus, we must determine what the statute means as written and apply the statutory scheme to the facts in this case.

---

[6] In *Henderson v State Farm Fire & Cas Co*, 460 Mich 348; 596 NW2d 190 (1999), our Supreme Court noted that the application of a particular phrase to a given set of facts will not always be easy. *Id.* at 357 n 10, quoting *Horace Mann Ins v Stark*, 987 F Supp 562, 567 (WD Mich, 1997) (" '[A] term is not rendered ambiguous merely because its meaning may vary according to the circumstances.' "); *Gredig v Tennessee Farmers Mut Ins Co*, 891 SW2d 909, 914 (Tenn App, 1994) ("[T]he fact that the words may be difficult to apply to a given factual situation does not make those words ambiguous.").

[7] The trial court, as well as Grand Ledge, relied heavily on the statute's legislative history in interpreting MCL 123.141. But, if the meaning of the statute is plain and unambiguous, there is no reason to inquire into the Legislature's purpose or motives beyond the statute's plain language. *Fowler, supra* at 599. Legislative history cannot alter the meaning of clear statutory language. *In re Certified Question (Kenneth Henes Special Projects v Continental Biomass Industries)*, 468 Mich 109, 116; 659 NW2d 597 (2003).

1. MCL 123.141(1)

Const 1963, art 7, § 24, empowers cities and villages to own and operate water supply systems for the benefit of residents and nonresidents:

> Subject to this constitution, any city or village may acquire, own or operate, within or without its corporate limits, public service facilities for supplying water, light, heat, power, sewage disposal and transportation to the municipality and the inhabitants thereof.
>
> *  *  *
>
> Any city or village may sell and deliver heat, power or light without its corporate limits in an amount not exceeding 25 percent of that furnished by it within the corporate limits, except as greater amounts may be permitted by law; may sell and deliver water and provide sewage disposal services outside of its corporate limits in such amount as may be determined by the legislative body of the city or village; and may operate transportation lines outside the municipality within such limits as may be prescribed by law.

Consistent with this constitutional authority, subsection 1 plainly authorizes municipal corporations to contract with any city, township, village, or authority to sell water extraterritorially. Grand Ledge is such a municipal corporation and is authorized to contract with Oneida in order to sell water services to Oneida residents. To that end, Grand Ledge and Oneida entered into the 1980 agreement.

2. MCL 123.141(2)

The general authority governing the rates that can be charged is set forth in subsection 2. It requires the price of any water sold to be based upon, and forbids the price to exceed, "the actual cost of service as determined

under the utility basis of ratemaking." MCL 123.141(2). However, subsection 2 provides an exemption to this requirement: the actual cost of service must be charged *unless* the water system "is not a contractual customer of another water department and that serves less than 1% of the population of the state." MCL 123.141(2). Clearly, Grand Ledge has a water system but the system is not a contractual customer; it is not under contract to buy water from another department. And, Grand Ledge services less than one percent of the state—it services only its own residents and those extraterritorial users authorized for service. Because Grand Ledge qualifies under the exemption, if viewed in isolation, the general actual cost provision of subsection 2 would not apply to the rates charged to Oneida residents. Accordingly, subsection 2, standing alone, would permit Grand Ledge to charge Oneida residents more than the actual cost of service.

### 3. MCL 123.141(3)

Nonetheless, a more specific rate-charging scheme is set forth in subsection 3. This subsection provides that the "retail" rate charged to residents of a township that "is a contractual customer as provided by subsection (2) shall not exceed the actual cost of providing the service." According to *Random House Webster's Unabridged Dictionary* (2001), "retail" is defined as "the sale of goods to ultimate consumers, usually in small quantities."[8] Here, Oneida is a contractual customer of Grand Ledge by virtue of the 1980 agreement and as stipulated by the parties. The Oneida residents are the

---

[8] Undefined words in a statute should be accorded their plain and ordinary meanings, and dictionary definitions may be consulted in such situations. *Koontz v Ameritech Services, Inc*, 466 Mich 304, 312; 645 NW2d 34 (2002).

ultimate consumers of the water supplied by Grand Ledge. Accordingly, under subsection 3 Grand Ledge is required to charge the "actual cost of providing" water services.

### B. APPLICATION OF MCL 123.141

Grand Ledge argues that requiring it to charge actual costs under subsection 3 would render nugatory the exemption language under subsection 2, and therefore, it should also be exempt under subsection 3. According to Grand Ledge, the doctrine of *noscitur a sociis* requires that subsections 2 and 3 be read together, and that when read in such a manner, the exemption language of subsection 2 necessarily applies in the context of subsection 3. We disagree. Simply put, Grand Ledge's interpretation would require us to graft onto subsection 3 an additional requirement that does not exist.

Subsection 3, referring back to the term "contractual customer" used in subsection 2, provides:

> The retail rate charged to the inhabitants of a city, village, township, or authority which is a contractual customer *as provided by subsection (2)* shall not exceed the actual cost of providing the service. [MCL 123.141(3) (emphasis added).]

Subsection 2, while not precisely setting forth a definition of "contractual customer," determines that the relationship between the contracting parties will provide the definition of who is a "contractual customer":

> The price charged by the *city to its customers* shall be at a rate which is based on the actual cost of service as determined under the utility basis of rate-making. This subsection shall not remove any minimum or maximum limits imposed *contractually between the city and its whole-*

*sale customers* during the remaining life of the contract.
[MCL 123.141(2) (emphasis added).]

Thus, a "contractual customer" is one that contracts with a city for water services in general and one that contracts for wholesale water services in particular. Here, Grand Ledge contracted with Oneida to provide water services to Oneida residents; accordingly, Oneida is a contractual customer by virtue of the 1980 agreement and its stipulation of that relationship. And, according to subsection 2, a contractual customer is prohibited from being charged more than the actual cost of service. The Legislature did provide an exemption to this flat prohibition: the exemption language of subsection 2 specifically provides that *"[t]his subsection shall not apply to a water system that is not a contractual customer of another water department and that serves less than 1% of the population of the state."* (Emphasis added.) Importantly, however, the exemption in subsection 2 only applies to the pricing scheme of that particular subsection; it does not exempt water departments selling water services from the pricing requirements of the entire statute. Grand Ledge continues to be bound by the other requirements of the statute. A careful reading of subsection 3 in conjunction with subsection 2 makes clear that nothing in subsection 3 invokes the exemption language of MCL 123.141(2); rather, it only invokes the contractual relationship between the contracting parties in defining who is a contractual customer.

While subsection 2 is the general charging scheme for water departments selling water services, subsection 3 specifically applies to entities selling water services to retail customers. "[W]here a statute contains a specific statutory provision and a related, but more general, provision, the specific one controls." *In re Haley, supra*

at 198, citing *Gebhardt, supra* at 542-543. Clearly, the Legislature intended to ensure that retail customers would only be charged the actual cost of providing the service regardless of how they received it.[9] By choosing to sell water services to Oneida residents at retail through its contractual arrangement with Oneida as provided for in the 1980 agreement, Grand Ledge is bound by the specific retail provisions of subsection 3. Grand Ledge argues that the exemption language in subsection 2 is rendered meaningless under this interpretation. To the contrary, utilizing the interpretation set forth by Grand Ledge, subsection 3 would be rendered nugatory in spite of the Legislature's express intent that the retail rate charged to "inhabitants" of a township that is a "contractual customer" shall not exceed the cost of the seller's actual cost.

In the present circumstances, Grand Ledge directly charges its contractual customer's inhabitants more than the actual cost of service under the 1980 agreement. This arrangement violates the requirements of subsection 3. Accordingly, the 1980 agreement, which requires that township residents pay Grand Ledge for water services at a rate double that which Grand Ledge residents pay for the same services, is in violation of MCL 123.141(3).

Because the language of subsection 3 does not explicitly or implicitly incorporate the exemption language of subsection 2, but rather only incorporates the contractual relationship between the contracting parties, we conclude that subsection 3 requires that the rate

---

[9] Likewise, if Grand Ledge were selling water to Oneida for subsequent resale to Oneida's residents, Grand Ledge would not be bound by the limitations in subsection 2 and could charge Oneida more than actual costs. But Oneida would thereafter be limited by the actual cost of service provisions in subsection 3 when selling the water at retail to its residents.

charged by a water department directly to "inhabit-ants" of a municipal corporation that is a contractual customer of that water department not exceed actual costs. Accordingly, we hold that a municipality selling water extraterritorially directly to individual inhabit-ants of a contractual customer must charge those inhabitants for actual costs pursuant to MCL 123.141(3), regardless of whether that municipality is exempt from the provisions of MCL 123.141(2).

Reversed and remanded for further proceedings con-sistent with this opinion. We do not retain jurisdiction.