WOLVERINE POWER SUPPLY COOPERATIVE, INC v
DEPARTMENT OF ENVIRONMENTAL QUALITY

Docket No. 287553. Submitted May 14, 2009, at Petoskey. Decided
September 15, 2009, at 9:00 a.m.

Wolverine Power Supply Cooperative, Inc., and Mid-Michigan En-
ergy, LLC, sought permits from the Department of Environmental
Quality for the construction of new power plants. While the
applications were pending, Wolverine requested a declaratory
ruling from the department that Mich Admin Code, R 336.2830,
which allowed aggrieved persons to seek a contested case hearing
to challenge the approval or denial of a permit to install a major
source of air emissions, was invalid or could not be applied to
Wolverine's application. The department denied the request. Wol-
verine and Mid-Michigan filed complaints in the Missaukee Circuit
Court against the department, seeking a declaratory judgment
that the rule was invalid. The court, William M. Fagerman, J.,
granted Wolverine and Mid-Michigan summary disposition and
determined that the rule was contrary to MCL 324.5501 *et seq*. The
department appealed, and the Court of Appeals granted Consumer
Energy Company's motion to intervene.

The Court of Appeals *held*:

The National Resources and Environmental Protection Act
authorizes the department to promulgate rules governing permits
to install facilities that produce air emissions, MCL 324.5505, and
rules governing renewable permits to operate major sources of air
emissions, MCL 324.5506. MCL 324.5505(8) provides that any
person may seek judicial review of the issuance or denial of a
permit to install by a direct appeal in the circuit court in accor-
dance with MCL 600.631. MCL 324.5506(14), however, specifies
two separate review procedures for entities seeking review with
respect to operating permits. Owners or operators of a facility may
seek a contested case hearing when denied an operating permit,
and any person may seek judicial review under MCL 600.631 of the
issuance or denial of an operating permit. The inclusion of a
contested case procedure in MCL 324.5506(14) for permits to
operate and the omission of a contested case procedure in MCL
324.5505(8) for permits to install, read in combination with the

statement in MCL 324.5505(8) that "[p]etitions for review shall be the exclusive means to obtain judicial review" of the issuance or denial of a permit to install, demonstrates that the contested case procedure is not available for decisions on permits to install. The department lacked authority to promulgate Mich Admin Code, R 336.2830.

Affirmed.

ENVIRONMENT — AIR QUALITY — ADMINISTRATIVE LAW — PERMITS TO INSTALL MAJOR SOURCES OF AIR EMISSIONS — JUDICIAL REVIEW OF PERMITS TO INSTALL SOURCES OF AIR EMISSIONS — CONTESTED CASE PROCEDURES.

Judicial review is the exclusive means of obtaining review of decisions by the Department of Environmental Quality on permits to install major sources of air emissions (MCL 324.5505[8], 324.5506[14]; Mich Admin Code, R 336.2830).

*Warner Norcross & Judd LLP* (by *John J. Bursch, Steven C. Kohl,* and *Sarah C. Lindsey*) for Wolverine Power Supply Cooperative, Inc.

*Varnum LLP* (by *Aaron M. Phelps* and *Bruce Goodman*) for Mid-Michigan Energy, LLC.

*Michael A. Cox,* Attorney General, *B. Eric Restuccia,* Solicitor General, and *Neil D. Gordon,* Assistant Attorney General, for the Department of Environmental Quality.

*Miller, Canfield, Paddock and Stone, P.L.C.* (by *Ronald E. Baylor, Jaclyn Shoshana Levine,* and *Kelly M. Martorano*), for Consumers Energy Company.

Before: WHITBECK, P.J., and DAVIS and GLEICHER, JJ.

PER CURIAM. Defendant, Department of Environmental Quality (the Department), appeals as of right the trial court's order granting plaintiffs, Wolverine Power Supply Cooperative, Inc., and Mid-Michigan Energy, LLC, summary disposition under MCR 2.116(C)(10). Because we conclude that the Department had no authority to pro-

mulgate the rule in question—which adds a contested case procedure for permits to install major sources of air emissions—we affirm.

I. BASIC FACTS AND PROCEDURAL HISTORY

The Department is a state agency that administers federal and state air quality standards. The Department has promulgated rules for the prevention of significant deterioration of air quality under which entities seeking to install new major sources of air emissions must obtain permits from the Department. In 2006, the Department promulgated Rule 1830.[1] Rule 1830 allows persons to request a formal hearing, known as a contested case hearing, after receiving notice of the Department's approval or denial of a permit.

Plaintiffs Wolverine and Mid-Michigan are companies that provide electricity to Michigan residents. Intervenor Consumers Energy Company is also a company that provides electricity to Michigan residents. In September 2007, Wolverine and Mid-Michigan sought permits from the Department regarding the proposed construction of new power plants that would use coal and biomass fuels. While the permit applications were pending, Wolverine requested a declaratory ruling from the Department that Rule 1830 was invalid or that it could not be applied to Wolverine's permit application. In June 2008, the Department denied Wolverine's request, stating that the request "does not meet the requirements for issuance of a declaratory ruling." The Department also stated that it "had no authority to strike down a rule, nor does it have the authority to ignore its application to a particular licensee."

---

[1] Mich Admin Code, R 336.2830.

Wolverine and Mid-Michigan then filed complaints against the Department, seeking a declaratory judgment that Rule 1830 was invalid. At the subsequent summary disposition hearing, Wolverine's counsel asserted that the permitting program for the prevention of significant deterioration of air quality had been in effect for more than 20 years. (The program for the "prevention of significant deterioration" of air quality is "the major source preconstruction permit program" for installation of sources of air emissions.[2]) According to Wolverine's counsel, during those 20 years, the Department conducted the permitting process as a "delegated state," meaning that the Department reviewed permit applications related to the prevention of significant deterioration of air quality under the authority of the United States Environmental Protection Agency. Wolverine's counsel explained that the Department adopted Rule 1830 as part of a set of rules to become an "approved state," meaning that the Department would review permit applications related to the prevention of significant deterioration of air quality under its own authority.

Wolverine's counsel argued that Rule 1830 was a "sweeping change" that was not required by the federal notice and comment provisions and "does not effectuate the purposes of the clean air act."[3] Counsel stated that a contested case hearing is vastly different from circuit court review of administrative decisions, noting that a contested case hearing can be a lengthy process that involves discovery and an evidentiary record. Mid-Michigan's counsel presented similar arguments.

In response, the Department's counsel argued that Rule 1830 merely "changed the point in the permitting

---

[2] Mich Admin Code, R 336.2801(jj).

[3] 42 USC 7470 *et seq.*

process where there is a final agency action." The Department's counsel explained that before the promulgation of Rule 1830, applicants could appeal permit decisions directly in circuit court. Rule 1830 "added a step"; that is, it allowed applicants or other aggrieved persons to seek contested case hearings. Counsel indicated that after a decision on the contested case hearing, permit applicants could appeal in circuit court. Counsel acknowledged that the contested case hearing procedure could add substantial time to the permitting process.

In ruling on the motions, the trial court determined that Rule 1830 was contrary to the provisions of the enabling statute and that the rule would have no force or effect with respect to plaintiffs' permit applications. The Department now appeals.

## II. RULE 1830 AND THE DEPARTMENT'S STATUTORY AUTHORITY

### A. STANDARD OF REVIEW

The Department argues that it has clear and broad statutory authority to promulgate rules for hearings on air emission permitting decisions. According to the Department, this authority includes the power to promulgate Rule 1830, which allows persons to request contested hearings to challenge permitting decisions for new sources of air emissions. The Department asserts that Rule 1830 is an appropriate exercise of its authority to develop an evidentiary record on permitting issues before rendering a final agency decision. The Department contends that the trial court misunderstood the statutory and regulatory structure applicable to Rule 1830 and incorrectly declared the rule invalid.

Wolverine and Mid-Michigan argue that Rule 1830 is invalid. They assert that the rule conflicts with the statutory section governing review of permitting decisions

—MCL 324.5505(8)—that specifies that the exclusive review procedure for a new source permitting decision is a petition in the circuit court. They contend that the section does not allow contested case hearings for new source permitting decisions. They go on to argue that the Department cannot rely on general statutory provisions for authority to promulgate the rule at issue for three reasons. First, the Department failed to present this argument to the trial court, so the argument is waived. Second, the general statutory provisions are reserved for the Commission of Natural Resources, not the Department. Third, according to Wolverine, the Department's position is contrary to the position it took and prevailed on in unrelated litigation, and thus it is estopped from pursuing its argument in the present case.

Consumers Energy additionally argues that this Court should reject the Department's proposed statutory interpretation because the interpretation violates well-established rules of statutory construction. Statutory construction rules require this Court to adhere to unambiguous statutory language, and, according to Consumers Energy, the enabling language here unambiguously precludes contested case hearings on new source emission permits. Consumers Energy asserts that the statutory construction rules also require the Court to apply the most specific statute in a topic area, and the most specific statute applicable to new source permits states that the exclusive means for review is a judicial review, not a contested case hearing.

According to Consumers Energy, aside from the rules of statutory construction, Rule 1830 is unnecessary and creates undue confusion regarding the review process for new source emission permits because the application process for permits provides ample opportunity for technical review and public comment, rendering later

contested case hearings unnecessary. Consumers Energy asserts that the Legislature intentionally excluded contested case hearings for new source permits because those permits involve initial licenses and do not require the formal due process protections available to holders of existing permits. Consumers Energy contends that Rule 1830 conflates two distinct statutory methods of administrative procedure and is thus invalid.

The issue whether the Department was within its statutory authority in promulgating Rule 1830 is a question of law, which this Court reviews de novo.[4]

### B. ISSUE PRESERVATION

As a preliminary matter, we note that the Department preserved the basic issue here by presenting it to the trial court in a summary disposition brief and at the summary disposition hearing. However, on appeal the Department relies in part on MCL 324.1101, which it did not rely on in the trial court. Therefore, Wolverine and Mid-Michigan claim that the Department failed to preserve its argument concerning MCL 324.1101. But the Department maintains that no preservation was required because reliance on MCL 324.1101 is merely part of a legal argument applicable to the question whether it had statutory authority to promulgate Rule 1830. Further, the Department points out that this Court may disregard preservation requirements when the factual record presents the necessary issues or when consideration of the unpreserved argument is necessary to the proper analysis of the appeal.[5]

---

[4] *McNeil v Charlevoix Co*, 275 Mich App 686, 691; 741 NW2d 27 (2007), aff'd 484 Mich 69 (2009). See generally *In re Complaint of Rovas Against SBC Michigan*, 482 Mich 90, 100-109; 754 NW2d 259 (2008).

[5] See *Laurel Woods Apartments v Roumayah*, 274 Mich App 631, 640; 734 NW2d 217 (2007).

This Court has previously allowed an appellant who challenged the validity of a regulation to pursue an argument on appeal that had not been preserved in the trial court.[6] In *McNeil v Charlevoix Co*, this Court determined that the issue whether an agency had authority to develop regulations was a question of law and that because the record contained the facts necessary to address the question, this Court would review the appellant's argument.[7] Similarly, the question presented here encompasses the Department's authority to promulgate a regulation, and consideration of MCL 324.1101 is necessary to a full and proper resolution of the appeal. Accordingly, we will consider the Department's argument regarding MCL 324.1101.

### C. REGULATION OF AIR EMISSIONS

The federal Clean Air Act requires states to regulate air emissions.[8] The corresponding Michigan statutes are codified in part 55 of Michigan's Natural Resources and Environmental Protection Act (NREPA).[9] The NREPA delineates air emissions requirements and authorizes the Department to promulgate rules governing *permits to install* facilities that produce air emissions.[10] The NREPA also authorizes the Department to promulgate rules governing renewable permits to *operate*, as opposed to install, major sources of air emissions.[11] The NREPA requires the Department to provide for public notice and comment on permit applications and to provide for public hearings if there is a known public

---

[6] *McNeil, supra* at 693-694.

[7] *Id*. at 694 n 8.

[8] 42 USC 7407.

[9] MCL 324.5501 *et seq*.

[10] MCL 324.5505(2).

[11] MCL 324.5506; see Mich Admin Code, R 336.1210 and 336.1211.

controversy about an application.[12] The Department adopted rules governing the prevention of significant deterioration of air quality and the permitting process.[13] The permitting process requires the owner of a proposed project to submit "information required by the department on the application form," which includes information such as the topography, climatology, and hydrology of the proposed site, as well as data on proposed fuels and projected emissions and a modeling analysis of air quality effects.[14]

D. RULE 1830

Rule 1830 broadened the method for interested parties to challenge a *permit to install* a new source of air emissions.[15] Rule 1830 reads, in pertinent part:

A person aggrieved by an action or inaction of the department under prevention of significant deterioration of air quality regulations may request a formal hearing, under 1969 PA 306, MCL 24.201. The following apply:

(a) The request shall be received by the department within 30 days after the person received notice of the decision to approve or deny the permit.

(b) The final decision in granting a contested case hearing lies with the department. . . .

(c) When the department issues a permit . . . , the permit is valid upon issuance and it is not automatically stayed if a person requests a formal hearing pursuant to this rule. A permittee may immediately initiate construction after permit issuance. However, the permittee faces the risk that a subsequent hearing may alter the terms or

---

[12] MCL 324.5511(3).

[13] Mich Admin Code, R 336.2801 to 336.2830.

[14] Mich Admin Code, R 336.1203 and 336.1205.

[15] See MCL 324.5505(1); Mich Admin Code, R 336.1116(f).

conditions of the permit.[16]

Thus, Rule 1830 allows aggrieved persons and permit applicants to seek a contested case hearing to challenge the approval or denial of a *permit to install*.[17]

### E. THE ADMINISTRATIVE PROCEDURES ACT

In referring to "1969 PA 306, MCL 24.201," Rule 1830 invokes the contested case hearing provisions of Michigan's Administrative Procedures Act.[18] According to the Administrative Procedures Act, a contested case hearing is

> a proceeding, including rate-making, price-fixing, and licensing, in which a determination of the legal rights, duties, or privileges of a named party is required by law to be made by an agency after an opportunity for an evidentiary hearing. When a hearing is held before an agency and an appeal from its decision is taken to another agency, the hearing and the appeal are deemed to be a continuous proceeding as though before a single agency.[19]

### F. THE DEPARTMENT'S RULEMAKING AUTHORITY

The Department's rulemaking authority derives from powers that the Michigan Legislature has granted.[20] To determine whether a particular rule is a valid exercise of an agency's authority, this Court applies a three-part test: "(1) whether the rule is within the subject matter of the enabling statute; (2) whether it complies with the legislative intent underlying the en-

---

[16] Mich Admin Code, R 336.2830.

[17] Mich Admin Code, R 336.2830(b).

[18] MCL 24.271 to 24.287.

[19] MCL 24.203(3).

[20] See *Citizens for Protection of Marriage v Bd of State Canvassers*, 263 Mich App 487, 492; 688 NW2d 538 (2004).

abling statute; and (3) whether it is arbitrary or capricious."[21] The parties' arguments focus on the first two parts of the test.

To address these arguments, this Court must examine the NREPA's enabling sections and determine whether the Department has authority to provide contested case hearings specifically with respect to *permits to install*. The question whether the NREPA provides the requisite authority is a matter of statutory construction.[22] This Court recently reiterated the general principles governing statutory construction in *Oneida Charter Twp v Grand Ledge*:

> When interpreting the meaning of a statute, our main objective is to ascertain and give effect to the Legislature's intent. The first step is to determine whether the language of the statute is plain and unambiguous. If the language is unambiguous, we must assume that the Legislature intended its plain meaning and, accordingly, we must apply the statute's language as written. In such instances, we must assume that every word has some meaning and we must give effect to every provision, if possible. In doing so, we are to give words their plain and ordinary meaning, unless otherwise defined by the Legislature. We may not speculate regarding the Legislature's probable intent, nor may we "inquire into the knowledge, motives, or methods of the Legislature." It is only when the statute's language is ambiguous that this Court is permitted to look beyond the statute's language to determine the Legislature's intent.
>
> We must not consider the statute's language in isolation; rather, we must consider each word and phrase in light of its placement and purpose within the statutory scheme. Subsections of a statute are not to be read dis-

---

[21] *Dykstra v Dep't of Natural Resources*, 198 Mich App 482, 484; 499 NW2d 367 (1993).

[22] *Verizon North, Inc v Pub Service Comm*, 263 Mich App 567, 569; 689 NW2d 709 (2004).

cretely, but as part of a whole. "[T]he entire act must be read, and the interpretation to be given to a particular word in one section arrived at after due consideration of every other section so as to produce, if possible, a harmonious and consistent enactment as a whole."

Finally, we are mindful that "it is a settled rule of statutory construction that where a statute contains a specific statutory provision and a related, but more general, provision, the specific one controls."[23]

### G. MCL 324.5505

#### (1) GENERAL PROVISIONS

MCL 324.5505 is the section of NREPA's air pollution control provisions that governs permits to install. MCL 324.5505 expressly authorizes the Department to grant or deny permits to install and to promulgate rules for issuing permits. The statute requires entities to obtain permits from "the department."[24] The NREPA defines "department" as the director of the Department of Natural Resources or the director's designee.[25] In 1995, an executive order transferred the powers of the Air Quality Division of the Department of Natural Resources to the Department.[26] The executive order transferred all "statutory authority, powers, duties, functions and responsibilities" of the Department of Natural Resources Air Quality Division, "including but not limited to the authority, powers, duties, functions and responsibilities set forth in . . . [MCL] 324.5501 *et seq.*"[27]

---

[23] *Oneida Charter Twp v Grand Ledge*, 282 Mich App 435, 442-443; 766 NW2d 291 (2009), rev'd on other grounds 485 Mich ___ (Docket No. 138520, entered September 11, 2009) (citations omitted).

[24] MCL 324.5505(1).

[25] MCL 324.301(b).

[26] MCL 324.99903, compiling Executive Reorganization Order 1995-16.

[27] MCL 324.99903, ¶ 3(a).

### (2) RULEMAKING POWERS

Various subsections of MCL 324.5505 grant certain powers to the Department. Subsection (2) states that the "department shall promulgate rules to establish a permit to install program to be administered by the department."[28] Similarly, subsection (4) states that the "department may promulgate rules to provide for the issuance of general permits"; subsection (5) states that the "department may issue a permit to install"; and subsection (6) states that the "department may promulgate rules to establish a program that authorizes issuance of nonrenewable permits to operate for sources, processes, or process equipment that are not subject to the requirement to obtain a renewable operating permit pursuant to [MCL 324.5506]."[29]

### (3) SUBSECTION (8)

MCL 324.5505(8), hereinafter "subsection (8)," addresses appeals from permitting actions. Unlike the subsections quoted earlier, which expressly authorize the Department to take certain actions, subsection (8) does not directly delegate authority to the Department. Rather, subsection (8) delineates the appeal process applicable to *permits to install,* providing that any person may seek judicial review of the issuance or denial of such a permit:

> Any person may appeal the issuance or denial by the department of a permit to install, a general permit, or a permit to operate authorized in rules promulgated under subsection (6), for a new source in accordance with section 631 of the revised judicature act of 1961, 1961 PA 236, MCL 600.631. Petitions for review shall be the exclusive means

---

[28] MCL 324.5505(2).

[29] MCL 324.5505(4) to (6).

to obtain judicial review of such a permit and shall be filed within 90 days after the final permit action, except that a petition may be filed after that deadline only if the petition is based solely on grounds arising after the deadline for judicial review. Such a petition shall be filed no later than 90 days after the new grounds for review arise. Appeals of permit actions for existing sources are subject to [MCL 324.5506(14)].[30]

The appeal process to which subsection (8) refers is a direct appeal in the circuit court under the Revised Judicature Act. Under that act,

[a]n appeal shall lie from any order, decision, or opinion of any state board, commission, or agency . . . to the circuit court of the county of which the appellant is a resident or to the circuit court of Ingham county, which court shall have and exercise jurisdiction with respect thereto as in nonjury cases."[31]

Wolverine, Mid-Michigan, and Consumers Energy argue that subsection (8), through its pronouncement that "[p]etitions for review shall be the exclusive means to obtain judicial review of such a permit," plainly and unambiguously limits permit-to-install appeals to the review procedure available under the Revised Judicature Act; that is, appeals in circuit court. They assert that, given the reference to this "exclusive" procedure, the Department's attempt to add a contested case hearing procedure is invalid. But the terms of subsection (8) do not, in and of themselves, support this argument.

There can be no dispute that the statutory term "shall" is mandatory; it expresses a directive, not an option.[32] Also, the term "exclusive" is unambiguous; it

---

[30] MCL 324.5505(8).

[31] MCL 600.631.

[32] *In re Kostin Estate*, 278 Mich App 47, 57; 748 NW2d 583 (2008).

means "limited to that which is designated[.]"[33] However, when read in context, these words simply provide that *a petition for review*, as opposed to some other means of review, *shall be the exclusive means* to obtain *judicial* (that is, circuit court) review of the Department's permit issuance or denial. Contrary to how Wolverine, Mid-Michigan, and Consumers Energy would have us read the provision, subsection (8), on its face, does not state that *judicial* review is the exclusive means to obtain review. In other words, subsection (8) does not, by itself, limit review exclusively to a *judicial* review procedure. Therefore, when read alone, subsection (8) might arguably permit *administrative*, as well as *judicial*, review. But, as we will explain, when compared with MCL 324.5506(14), it becomes clear that the Legislature knows how to allow for both administrative and judicial review of Department decisions, yet chose not to provide for both of those procedures in subsection (8).

### H. MCL 324.5506(14)

MCL 324.5506 governs operating permits for sources of air emissions. It authorizes the Department to promulgate rules to establish an *operating-permit* program, including inspections, monitoring, and compliance plans.[34] MCL 324.5506(14), hereinafter "subsection (14)," addresses review of *operating-permit* decisions. Unlike subsection (8), subsection (14) mandates two separate review procedures for two types of entities that may seek review concerning *operating permits*. The first review procedure is a contested case hearing, which is available only to owners or operators of a facility seeking review of the denial of an operating

---

[33] *Random House Webster's College Dictionary* (1997).

[34] MCL 324.5506(4)(b) and (d).

permit.[35] The second procedure is judicial review, which is available to any person seeking review of the issuance or denial of an operating permit. Subsection (14) reads:

> A person who owns or operates an existing source that is required to obtain an operating permit under this section, a general permit, or a permit to operate authorized under rules promulgated under [MCL 324.5505(6) (issuance of nonrenewable permits to operate)] may file a petition with the department for review of the denial of his or her application for such a permit, the revision of any emissions ˙ limitation, standard, or condition, or a proposed revocation of his or her permit. This review shall be conducted pursuant to the contested case and judicial review procedures of the administrative procedures act of 1969, Act No. 306 of the Public Acts of 1969, being sections 24.201 to 24.328 of the Michigan Compiled Laws. Any person may appeal the issuance or denial of an operating permit in accordance with section 631 of the revised judicature act of 1961, Act No. 236 of the Public Acts of 1961, being section 600.631 of the Michigan Compiled Laws. A petition for judicial review is the exclusive means of obtaining judicial review of a permit and shall be filed within 90 days after the final permit action. Such a petition may be filed after that deadline only if it is based solely on grounds arising after the deadline for judicial review and if the appeal does not involve applicable standards and requirements of the acid rain program under title IV. Such a petition shall be filed within 90 days after the new grounds for review arise.[36]

As Wolverine, Mid-Michigan, and Consumers Energy point out, there is a striking distinction between the review procedures provided in subsection (8), concerning *permits to install*, and those provided in subsection (14), concerning *operating permits*. Subsection (8) allows "[a]ny person" to "appeal the issuance or denial"

---

[35] MCL 324.5506(14).

[36] MCL 324.5506(14).

of a *permit to install* by seeking a review under the Revised Judicature Act.[37] By contrast, subsection (14) allows owners or operators to seek a contested case hearing under the Administrative Procedures Act on an *operating-permit* denial and allows "[a]ny person" to seek a review under the Revised Judicature Act of the "issuance or denial of an operating permit . . . ."[38] When the Legislature includes a provision in one statute and omits the provision in a related statute, the Court should construe the omission as intentional and should not include an omitted provision where none exists.[39] We conclude that the inclusion of the contested case procedure in subsection (14), concerning *operating permits*, but not in subsection (8), concerning *permits to install*, demonstrates the Legislature's decision that contested case hearings are appropriate for denials of permits to operate, but are not appropriate for decisions on permits to install.

The Department maintains that because subsection (8) is silent with regard to contested case hearings, the Legislature made no conclusion on the contested case procedure for permits to install. This argument is plausible if subsection (8) is read in isolation. Subsection (8) states that a person may "appeal the issuance or denial" of a permit pursuant to the Revised Judicature Act and states that a petition for review under the Revised Judicature Act is the exclusive means to obtain "judicial review."[40] Therefore, as stated earlier, subsection (8) does not expressly prohibit *administrative* review; the subsection simply states that the Revised Judicature Act procedure is the exclusive means of *judicial* review. However, when read in combination

---

[37] MCL 324.5505(8).

[38] MCL 324.5506(14).

[39] *Donkers v Kovach*, 277 Mich App 366, 371; 745 NW2d 154 (2007).

[40] MCL 324.5505(8).

with the provision for contested case hearings in subsection (14), the omission of contested case hearings in subsection (8) is purposeful. That omission, combined with the Legislature's reference to the "exclusive" means of judicial review, demonstrates to us that the contested case procedure is not available for decisions on *permits to install*.

#### I. MCL 324.5503

MCL 324.5503 addresses the Department's general authority for air quality regulation. The Department argues that MCL 324.5503 provides broad authority to promulgate rules. In particular, the Department cites subdivisions (b), (e), and (u), which read:

> The department may do 1 or more of the following:
>
> \* \* \*
>
> (b) Issue permits for the construction and operation of sources, processes, and process equipment, subject to enforceable emission limitations and standards and other conditions reasonably necessary to assure compliance with all applicable requirements of this part, rules promulgated under this part, and the clean air act.
>
> \* \* \*
>
> (e) Make findings of fact and determinations.
>
> \* \* \*
>
> (u) Do such other things as the department considers necessary, proper, or desirable to enforce this part, a rule promulgated under this part, or any determination, permit, or order issued under this part, or the clean air act.[41]

---

[41] MCL 324.5503.

We conclude that the Department's reliance on MCL 324.5503 is misplaced for two reasons. First, nothing in the provisions that the Department cites relates to promulgating rules for review of agency decisions. The provisions that the Department cites allow it to issue permits, to make findings of fact, and to do other things necessary to enforce clean air standards. The issuance and enforcement of rules, however, does not necessarily include an administrative review procedure after issuance of a permit.

Second, the provisions in MCL 324.5503 are general in nature; that is, they are not tied to the Department's administration of any particular type of permits or to its review procedures. By contrast, the provisions of subsection (8) are specific in nature, governing the Department's administration of *permits to install*. When a statutory scheme provides both general and specific provisions, the more specific provisions control.[42] Accordingly, the specific provisions of subsection (8) control the Department's authority to establish review procedures. The Department cannot rely on the general provisions in MCL 324.5503 as authority for the contested case procedures in Rule 1830.

### J. MCL 324.1101

#### (1) JUDICIAL ESTOPPEL

MCL 324.1101 governs general appellate rights of matters under the NREPA. Wolverine argues that this Court should judicially estop the Department from presenting an argument concerning MCL 324.1101. Judicial estoppel is an equitable doctrine that the Court may raise to preclude inconsistent judicial rulings.[43]

---

[42] *Miller v Allstate Ins Co*, 481 Mich 601, 613; 751 NW2d 463 (2008).

[43] *Opland v Kiesgan*, 234 Mich App 352, 365; 594 NW2d 505 (1999).

The doctrine allows courts to bar parties who have prevailed on a position in one proceeding from asserting wholly inconsistent positions in subsequent proceedings.[44] According to Wolverine, the Department took the position in a prior proceeding that MCL 324.1101 does not authorize contested case hearings on permit-to-install decisions.

However, the proceeding in which the Department took this position[45] was unrelated to the present proceeding. Generally, the judicial estoppel doctrine applies when a party's position conflicts with "a position taken earlier in the *same or related* litigation."[46] Moreover, as the Department correctly points out, the position it took in the prior proceeding was not wholly inconsistent with the position it takes here.

(2) THE DEPARTMENT'S AUTHORITY UNDER EXECUTIVE ORDERS

The agencies that have authority over natural resources have changed over time. In 1991, an executive reorganization order consolidated various boards and commissions into the Department of Natural Resources.[47] The order transferred authority that had been vested in the Commission of Natural Resources and other agencies to the Department of Natural Re-

[44] *Paschke v Retool Industries*, 445 Mich 502, 509-510; 519 NW2d 441 (1994).

[45] *In re Appelt*, unpublished order of the Department of Environmental Quality, entered August 14, 1996 (File No. 990-90).

[46] *Detroit Edison Co v Pub Service Comm*, 221 Mich App 370, 382; 562 NW2d 224 (1997) (emphasis added); see also *Michigan Gas Utilities v Pub Service Comm*, 200 Mich App 576, 583; 505 NW2d 27 (1993); but see *Opland, supra* at 363 n 8 (noting in dicta that privity is not required for judicial estoppel).

[47] Executive Reorganization Order 1991-22, compiled at MCL 299.13; *House Speaker v Governor*, 443 Mich 560, 564-565; 506 NW2d 190 (1993).

sources.[48] The order retained certain authority in the Commission of Natural Resources, in particular, that a final decision of the Department of Natural Resources relating to the issuance of permits would be subject to review by the Commission of Natural Resources.[49]

In 1995, another executive reorganization order created the Department.[50] That order transferred all of the Air Quality Division's authority to the Department, "including but not limited to . . . authority under [MCL] 324.5501 et seq."[51] Wolverine, Mid-Michigan, and Consumers Energy claim that the Department has no authority for administrative appeals under the 1995 order because the Department's predecessor under the 1991 order had no authority for administrative appeals. We disagree. The 1995 order transferred the Commission of Natural Resources' authority for administrative appeals to the Department, as follows:

> All authority to make decisions regarding administrative appeals associated with the transfers referred to in paragraphs 3 [including the transfer of the Air Quality Division], 5 and 6 above, which reside with the Commission of Natural Resources or the Michigan Department of Natural Resources, are transferred to the Director of the Michigan Department of Environmental Quality. In the event the Director is directly involved in an initial decision which is subsequently appealed through the Office of Administrative Hearings and to the Director for a decision, the Director shall appoint an individual within or outside the Michigan Department of Environmental Quality to decide the appeal.[52]

---

[48] ERO 1991-22, part III.

[49] ERO 1991-22, part IV(B)(2)(b).

[50] See MCL 324.99903.

[51] MCL 324.99903, ¶ 3(a).

[52] MCL 324.99903, ¶ 7.

(3) INTERPRETATION OF MCL 324.1101

The Department argues that MCL 324.1101 "broadly authorizes [the Department] to review challenges to permitting decisions for both new and existing sources by conducting case hearings when the agency chooses to do so." According to the Department, the lack of reference to contested case hearings in MCL 324.5505 must therefore be read in the context of MCL 324.1101. MCL 324.1101 provides two procedures for review of agency decisions, the first applicable to a "final decision" of the Department regarding permits and the second applicable to other Department decisions:

> (1) If a person has legal standing to challenge a final decision of the department under this act regarding the issuance, denial, suspension, revocation, annulment, withdrawal, recall, cancellation, or amendment of a permit or operating license, the commission, upon request of that person, shall review the decision and make the final agency decision. A preliminary, procedural, or intermediate decision of the department is reviewable by the commission only if the commission elects to grant a review. If a person is granted review by the commission under this section, the person is considered to have exhausted his or her administrative remedies with regard to that matter. The commission may utilize administrative law judges or hearing officers to conduct the review of decisions as contested case hearings and to issue proposals for decisions as provided by law or rule.

> (2) In all instances, except those described in subsection (1), if a person has legal standing to challenge a final decision of the department under this act, that person may seek direct review by the courts as provided by law. Direct review by the courts is available to that person as an alternative to any administrative remedy that is provided in this act. A preliminary, procedural, or intermediate action or ruling of the department is not immediately reviewable, except that the court may grant leave for

review of a preliminary, procedural, or intermediate action or ruling if the court determines that review of the final decision would not provide an adequate remedy. If a person is granted direct review by the courts under this section, the person is considered to have exhausted his or her administrative remedies with regard to that matter.[53]

MCL 324.1101 is general in scope, in that it applies to all permits and licenses that may issue under the NREPA, including, among many others, those for floodplain alteration, sewer systems, pesticide sales, soil erosion, and fur dealing.[54] In contrast, the rules on prevention of significant deterioration of air quality, which include Rule 1830, do not list MCL 324.1101 as an enabling authority. The preface to the rules on prevention of significant deterioration of air quality state that they are "[b]y authority conferred on the director of the department of environmental quality by sections 5503, 5505(4), and 5512 of 1994 PA 451, MCL 324.5503, 324.5505(4), and 324.5512, and Executive Reorganization Order No. 1995-18, MCL 324.99903."[55] Applying the principle that a specific statutory provision will control over a related general provision, MCL 324.1101 cannot be deemed to grant the Department authority to provide a review process for *permits to install*.[56]

In sum, the Department's reliance on the general structure of the NREPA and the general enabling statutes is unpersuasive. The Legislature designated a specific review procedure for decisions on *permits to install*, and the Department must adhere to that procedure unless and until the Legislature amends the specified review.

---

[53] MCL 324.1101(1) and (2).

[54] See MCL 324.1301(d).

[55] 2006 Mich Reg 23 (January 1, 2007), p 2.

[56] *Miller, supra* at 613.

.

We note, however, that during the pendency of this appeal Governor Granholm issued an executive directive addressing the processing of air permit applications.[57] The directive declares, among other things, that the need for additional coal-fired generating plants has been reduced, and states:

> A. Before issuing a permit to install under Part 55 of the National Resources and Environmental Protection Act, 1994 PA 451, MCL 324.5501 to 324.5542, for the construction of a new coal-fired electricity generating plant, the Department of Environmental Quality shall determine whether there is a feasible and prudent alternative consistent with the reasonable requirements of the public health, safety, and welfare that would better protect the air, water, and other natural resources of this state from pollution than the proposed coal-fired electricity generating plant.
>
> B. Before making the determination required by Paragraph A, the Department shall first determine whether a reasonable electricity generation need exists in this state that would be served by the proposed coal-fired electricity generating plant. If a reasonable electricity generation need exists in this state, the Department shall estimate the extent of the reasonable electricity generation need.
>
> * * *
>
> D. If the Department determines that a feasible and prudent alternative to the construction of a new proposed coal-fired electricity generating plant exists consistent with the reasonable requirements of the public health, safety, and welfare that would better protect the air, water, and other natural resources of this state than the proposed coal-fired electricity generating plant, the Department shall not issue a permit to install.[58]

---

[57] Executive Directive No. 2009-2 (February 13, 2009).

[58] ED 2009-2, ¶¶ A, B, and D.

Although the directive does not address review procedures, it appears to establish an additional fact-finding requirement before the issuance of a permit to install. As the issue is not before us, we take no position on whether the directive requires contested case hearings to establish the necessary factual record for a challenge to a permit-to-install decision.

### III. CONCLUSION

Rule 1830 directly conflicts with subsection (8). When read in conjunction with subsection (14), subsection (8) provides the exclusive means for obtaining review of the Department's decisions on *permits to install*. That procedure is a judicial review under the Revised Judicature Act. Accordingly, the Department had no authority to promulgate the provisions of Rule 1830 setting out a contested case hearing procedure for *permits to install*.

Affirmed.